## Turner, Day & Woolworth Handle Co. v. Morris et al.

(Decided Feb. 9, 1937.)

GAVIN H. COCHRAN and ROBERT F. VAUGHAN for appellant.

MILLIKEN & MILLIKEN for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee Warren H. Morris, an employee of the appellant, Turner, Day & Woolworth Handle Company, received an injury on October 18, 1933, in an accident which arose out of and in the course of his employment. He filed a claim for compensation with the Workmen's Compensation Board, and, on a hearing before a referee, it was found that as a result of the accident he was partially and permanently disabled to the extent of 40 per cent. to his body as a whole, and he was awarded compensation at the rate of $3.36 a week for a period of 335 weeks. On petition for a full board, review, the award was sustained. The employer has appealed from the judgment of the circuit court affirming the award of the board.

The appellant contends that it did not have due and timely notice of the accident; that the appellee's disability was caused wholly by an occupational disease and not by accident; and that his disability, regardless of its cause, amounted to no more than 25 per cent. to his body as a whole.

Appellee was sixty-four years of age at the time of the accident, and had been an employee of the appellant for more than thirty years, and, during all of that time, had been engaged in the same kind of work, grinding and polishing axe handles and other similar wooden tool handles. The handles are shaped and polished in the following manner: The operator uses a machine consisting of a belt covered with emery dust which runs from the head pulley to a smaller pulley, which is turned by the moving machinery, and this emery-covered belt grinds and polishes the wooden handles. The operator stands by the side of the machine and holds the rough billet of wood, which is to be made into a handle, in both hands, placing it against the moving emery belt and continuously turning it so that all sides may be ground and polished. The wood used is hickory, ash and oak, one or two inches in diameter and thirty-six inches in length. Appellee was in-

jured while stretching a new belt over the pulleys. The appellee described the accident as follows:

"I had a couple of new belts that I never had run, made a little bit too short for the machine that I was working on. They were the only ones that I had. I wanted to put them on the machine during noon time for I did not want to lay off for I had no time to lose. So I went to the belt room and brought out one belt and found that it was too short, and I took it back and told Brother Hardcastle they were too short, and he told me to stretch it on another machine, and I did. Then I tried it again, and it was still too short. I put it back on Walter's machine, and put my belt on my machine, and in stretching the belt, I had my hand on the spring of the pulley and holding it against the belt and pulley and had it almost on when it slipped on and pulled my fingers and thumb apart and hurt my hand. I stayed with the machine until after it started, and Brother Slaughter came along and I told him I hurt my hand, but I never did think that Clarence understood what I was saying. I got a bottle of Spirits of Camphor and put it on my hand until that afternoon."

Slaughter was appellee's foreman. Until his injury was received, appellee had worked steadily whenever work was available, but, following the accident, he was not able to work more than three or four days a week, and was then unable to accomplish the customary amount of work due to the condition of his injured hand and the pain and inconvenience incident to gripping the billets of wood. On October 26, 1933, eight days after the accident, he visited a physician who examined his hand. This physician, Dr. W. A. Briggs, testified, "There was some inflammatory condition of that hand. He did not have good use of it, but at that time he could not tell he had the injury that shows up now. Those enlargements have formed since I treated it. I thought possibly there was some little rheumatism there, and I gave some shots for rheumatism." Dr. Briggs further testified that he treated appellee's hand six times, but at that time he thought appellee was suffering from rheumatism, which the treatment would relieve. He stated that after the knot, or

enlargement, appeared at the base of appellee's middle finger, he realized that his first diagnosis was wrong and that the condition of appellee's hand resulted from a traumatic injury. On December 22, 1933, appellee went to Dr. F. D. Reardon, the company physician. He found a growth, or knot, in the palm of appellee's hand, which materially interfered with its flexion. He was asked this question, and made this answer:

"Q. What did you diagnose his trouble to be? A. Due to some injury to the hand, and what we term tenosynovitis. I mean that it was an irritation or trauma to this palmar sheath of the tendon."

He stated that it was possible the condition he found was caused by the continuous gripping of the billets of wood, but that the injury could have drawn the tendon sheath and could have caused the knot in the palm of appellee's hand. Both Dr. Briggs and Dr. Reardon testified that the injury was permanent, and totally disabled him from performing the work of grinding and polishing handles. After the accident, appellee continued to work for the appellant until December 29, 1933, but he was unable to work regularly. After December 29, 1933, he was unable to work and has not worked since that time. On the day before he quit work, the appellant sent for him and one of its employees assisted him in making a written report of his injury on form 7 of the Workmen's Compensation Board. Thereafter appellant paid to appellee compensation in the amount of $47.25, and, after the payments ceased, the appellee filed his application for adjustment of the claim with the compensation board.

Appellant insists that notice of an accident given more than two months after the accident occurred, where there is no excuse for the delay, is given too late as a matter of law. The appellee testified that he notified Slaughter, the foreman, immediately after the accident, but he stated that Slaughter made no response and he did not believe that the foreman heard or understood him. Slaughter testified that he was not notified, and knew nothing about the accident until shortly before the written notice was made late in December. It may be conceded that the record contains no evidence having probative value tending to show that appellant

received actual notice of the accident immediately after it happened. Whether or not there was reasonable cause for the delay in giving notice remains to be determined.

Section 4914 of the Kentucky Statutes provides that a notice of the accident shall be given to the employer as soon as practicable after the happening thereof, and section 4915 provides that such notice shall be in writing. It has been held that the latter provision is directory and not mandatory. Hay v. Swiss Oil Co., 249 Ky. 165, 60 S. W. (2d) 385, 386; Clover Fork Coal Co. v. Washington, 247 Ky. 848, 57 S. W. (2d) 994; Wilburn v. Auto Exchange, 198 Ky. 29, 31, 247 S. W. 1109. Section 4917 of the Statutes reads:

"Such notice shall not be held invalid or insufficient by reason of any inaccuracy in complying with sec. 4915 hereof unless it be shown that the employer was in fact misled to his injury thereby. Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, his agent or representative had knowledge of the injury or that such delay or failure to give notice was occasioned by mistake or other reasonable cause."

In Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467, 473, 474, it was pointed out that the words, "as soon as practicable," should be liberally construed. In disposing of the employer's contention that it had not been given due and timely notice of the accident, the court said:

"The right to defeat it is rested entirely upon the legal ground that notice was not given as required by the statute; and where the claim is meritorious, and the employer has not been prejudiced by the delay, the want of mistake or reasonable cause that would be sufficient to excuse the giving of the notice sooner should be very convincing, to authorize the rejection of the claim.

"The law was primarily intended for the protection and benefit of employes, and its beneficent purpose should not be defeated by a strict or technical construction that would deprive the employe of the compensation to which he would clearly be

entitled without contest if he had prosecuted his claim with diligence."

In Hay v. Swiss Oil Co., supra, the employee was injured on April 13, 1921. He felt pain in his side which continued at intervals for about a month, when a knot appeared on his side. He notified the foreman, who passed it off lightly, and the employee continued to work until August 24, when he went to see the mine doctor, who advised him to be operated on for hernia. He had been in good health up to the time of his injury, and did not really know of the hernia until he visited the doctor. The Workmen's Compensation Board denied him compensation on the ground that notice was not given in time, and, on appeal to the circuit court, the award of the board was approved. The judgment was reversed by this court, which said:

"It is the well-settled rule that the statute must be liberally construed to effectuate its purposes. It does not appear that appellee was in any wise prejudiced by the delay in giving notice. Working men are not expected to know the meaning of the symptoms they may have. They should not trouble their employer with complaints without reasonable grounds for doing so. Appellant in good faith continued at work and gave notice to the foreman when the knot appeared, and, when he treated it lightly, went on with his work until the knot troubled him, then went to the mine doctor and for the first time knew of the hernia from him. There was no such delay here in giving notice as affected appellant's rights under the statute. The delay was occasioned by a reasonable cause."

In the instant case, the accident happened on October 18. Appellee had been in good health up to that time, and had worked regularly, when work was available, for a long period of years. Following the accident, he was unable to work regularly, and after December 29, 1933, was totally unable to work. He believed that his injury was slight, and that its effects would soon disappear, and he was so told by his physician. The physician treated him for rheumatism, and only after the appearance of the knot in the palm of his hand several weeks later was the physician able to diagnose his condition correctly. He then stated that the

condition of appellee's hand resulted from the injury received on October 18. Appellee did not know the real cause of his condition until he visited the company doctor on December 22. The condition was latent, and, until the knot appeared on his hand, he had no reason to believe that the injury would have serious results.

Where the condition produced by the accident is a latent one, the limitation period fixed by the statute commences to run from the time when it becomes reasonably apparent that a compensable injury has been sustained. The purpose of the requirement that the employer shall have notice of the injury as soon as practicable is to afford him an opportunity to make a prompt investigation of the accident, and to place the employee under the care of a competent physician in order to minimize his disability and the employer's consequent liability. There is no evidence from which it can be reasonably inferred that appellant's rights were prejudiced in either of these respects by the failure to give the notice more promptly. The act does not contemplate that an employee shall report every minor accident to his employer. In this case, the appellee noticed no serious effects from the injury, which appeared to be slight, until the knot appeared in the palm of his hand and he went to see a physician on December 22. A physician had examined his hand about a week after the accident and then gave him treatment for rheumatism. There was really nothing to put an ordinary working man, such as appellee, on notice that the injury was one that called for any action. Under the circumstances, we think there was reasonable cause for the delay in giving notice.

Dr. Wilburn Helmus testified that the condition of appellee's hand resulted from an occupational disease and not from a traumatic injury. At least three other physicians testified that it could have been caused by traumatic injury, and one testified positively that it resulted from the injury received by appellee on October 18, 1933. There was competent testimony to sustain the board's finding on this point. There was also competent evidence to sustain the board's finding as to the extent of appellee's disability. He is uneducated, and has worked practically all of his life at the same trade. All of the physicians testified that he was to-

tally disabled from performing the work he had been accustomed to do, and that there was little else he could do because of the condition of his hand.

The judgment is affirmed.