## Wilson Gas Utilities Corporation v. Little et al.

(Decided May 10, 1938.)

CRAFT & STANFILL for appellant.

ROY HELM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The question is whether there was any evidence to support an award of the Workmen's Compensation Board to William Little, late employee of the appellant, for permanent disability. The award was based upon the finding that 77½ per cent. of his disability was due to trauma and 22½ per cent. to a pre-existing disease. Liability for temporary disability, from which it is claimed recovery has been had, is conceded.

While lifting a heavy tank, Little hurt himself and was promptly taken to the Hazard Hospital, where an emergency operation was performed on him by Dr. R. L. Collins, assisted by Dr. J. E. Hagan. It was found that Little had a perforated gastric ulcer, that is "an ulcer of the stomach had gone through the stomach walls." The ulcer was about the size of a dime and the perforation that of "the lead in a pencil or possibly bigger." The location of this ulcer was described as being about one and one-half to two and one-half inches from the "pyloric end of the stomach, that is, the outlet of the stomach." The surgeon cauterized the edges of the ulcer and "did a purse string suture around the ulcer and inverted the burnt edges closing the suture in toward the mucous lining." The perforation was caused by the strain in lifting the heavy object, although it is possible for a perforation to occur when one affected with an ulcer is doing nothing. Little was discharged from the hospital in about three weeks, but it appears he was never able to work afterward.

The injury occurred February 24, 1936. On August 24th following, Little was examined by several doctors in Louisville. Dr. W. C. Martin, a specialist in roentography (X-ray science), testified that the fluoroscope and film revealed a "deformed duodenal cap about an inch from the pylorus" (the aperture by which the stomach enters the duodenum), and no ulcer of the stomach was revealed. Dr. Martin made another examination of Little in November just before giving another deposition in the case, this time on the call of the defendant. He testified that both of his examinations showed a duodenum ulcer, but not a stomach ulcer, and he found no evidence of the existence of a stomach ulcer or of any having existed. He could not tell for sure whether the duodenum ulcer, which he found, had ever been perforated. The X-ray would not have shown it if there had been a healing from the

operation which had been performed on Little in February.

Dr. G. G. Altman, one of the consultants in the examination held August 24th, described Little's abdominal scar; found tenderness and pain there, and stated that the X-ray picture, which had been taken by Dr. Martin, confirmed his opinion that there was an ulcer perhaps the size of a dime with considerable oedema around the area. Dr. John D. Trawick's evidence was substantially the same, but he placed the existing ulcer "at the pyloric end of the stomach." He stated that the emergency operation had been well performed, but no effort having been made to cut out the ulcer it remained. We quote from his evidence:

"Q. Tell the Board whether or not in your opinion this man has any disability as a result of these things? A. This man has a present existing ulcer following previous operation for perforation; so long as that ulcer exists he is in danger of additional perforation, and furthermore perforations secondary to previous operations are generally considered much more serious and nearly always fatal."

Dr. Trawick pronounced the man totally disabled from doing manual labor, and estimated that 20 per cent. of disability was due to the previously existing ulcer and 80 per cent. to the trauma.

Dr. Wallace Frank, called by the defendant, deposed that he had examined Little the morning he gave his deposition in November, 1936. From the description of Dr. Collins' operation, Dr. Frank stated it was the proper surgical treatment; that if successful, it would have healed, and if not successful, the patient would have died. If it had healed, the X-ray would not reveal any evidence of the old ulcer. One ulcer may heal and others form. They are not infrequently multiple. The witness did not undertake to say whether there was an existing ulcer, but found tenderness about the scar on the patient's abdomen.

Dr. Harold F. Miller likewise made an examination before testifying. He was of opinion that the patient's trouble arose from an ulcer "below the pyloric valve in the duodenum." He stated this was a different ulcer from that treated by Dr. Collins as was described to him. Dr. Heman Humphrey's testimony was substan-

tially the same. However, it was emphatic that there was no ulcer in the stomach, and if there had ever been, it had completely healed. While location of the ulcer in the duodenum was only two or three inches from that described by Dr. Collins, Dr. Humphrey stated, "Practically, it is a long way off," and there could be no possibility for any one who had the abdomen and viscera exposed not to tell the difference or to know the difference between the stomach and duodenum. In short, his opinion was that the ulcer which had been perforated by the strain of lifting the heavy object in the course of his employment had healed and the existing one was altogether different and not caused by trauma. Of like effect was the testimony of Dr. Robertson Joplin. Dr. J. E. Hagan, who had assisted Dr. Collins in the operation, called by the defendant, confirmed very positively that the operation was for a perforated ulcer of the stomach. He made no reference to existing conditions.

Thus the doctors disagree. If Little's present condition is due to an ulcer in the duodenum and not to a rupture of an ulcer in the stomach, the employer is not responsible. The board had the certain and positive testimony of the two doctors who had opened up the man's abdomen and performed the operation that there was a perforated stomach ulcer and that it had caused the disability. One of those men testified that it continued to cause it. The other does not express an opinion. We have Dr. Trawick's opinion that the present ulcer is the same one and its previous perforation causes the man's present disability. While Dr. Altman's evidence is not quite so certain, he does not negative the appellee's claims, but indicates an opinion confirming them. The opinion of the Workmen's Compensation Board, prepared by Hon. W. J. Fields, regards the examination by Dr. Trawick and Dr. Altman as more thorough and their reasoning more logical. Continuing, the board reasons:

"Plaintiff was a strong and able bodied man and regular worker. He sustained a severe injury —so severe that those about him thought he would die before he reached the hospital. An emergency operation was performed, and the operation, according to Dr. Collins who performed it, disclosed a perforated gastric ulcer. The ulcer was not removed because the patient's condition would not

permit of it. Plaintiff has not been able to stay up all day since his operation. He testified on rebuttal that a place in the scar where he was operated, and immediately over the gastric ulcer, hurts him continuously, and that because of the pain he suffers he is forced to lie down as often as twice a day; and Drs. Altman and Trawick testified that the tenderness of the scar was very marked.

"Now, if plaintiff's disability is due to some cause other than the injury for which he was operated, and about which there is no dispute, when did his disability shift from the cause for which he was operated, which was the result of the trauma, to the injury claimed by medical witnesses for defendant? Plaintiff was a well man prior to the injury, and has been ill and incapacitated every hour since the injury; and it would be strange indeed for him to have recovered from one injury and contracted another injury or ailment without any apparent change in his physical condition for better or for worse. Therefore, in the light of the physical facts of the case, the Board accepts the opinion of Drs. Altman and Trawick, each of whom says that plaintiff is 100% disabled to perform manual labor. Dr. Altman expresses the opinion that 75% of plaintiff's disability is due to the traumatic injury and 25% due to the gastric ulcer. Dr. Trawick seems to doubt that any of his disability is due to pre-existing disease, but that in no event could more than 20% be attributed to pre-existing disease, the remaining 80% being chargeable to the traumatic injury of which plaintiff complains. The Board will, therefore, fix the percentage of plaintiff's disability due to trauma at the average between the opinions of these two medical witnesses, which would be 77½% due to trauma and 22½% due to pre-existing disease."

We have often recognized the authority of the compensation board to take into account not only the letter of the testimony but all circumstances and reasonable inferences and declared that the weight of all the evidence is for the judgment of the board. As stated in Agsten v. Brown-Williamson Tobacco Corporation, 272 Ky. 20, 113 S. W. (2d) 829, 831:

"Medicine has not been reduced to an exact science, and, so long as medical experts honestly

differ, fact-finding bodies will have to wrestle with disputed questions the best they may.

"* * * In the present case, there was evidence that the decedent was in good health before the accident, and that he suffered continuously thereafter * * *."

We are not able to say that there was no competent, probative evidence upon which the board could have based its decision.

The judgment is, therefore, affirmed.