## American Rolling Mill Co. v. Stevens et al.

Nov. 7, 1941.

As Modified on Denial of Rehearing March 27, 1942.

Caldwell & Gray for appellant.
Davis M. Howerton for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

In 1927 Lewis Stevens, hereinafter referred to as the plaintiff, entered the employment of the American Rolling Mill Company, hereinafter referred to as the Company. On Jan. 15, 1939, while working with a crew of men at a conveyor table on which loads of steel are brought into the "pickler" room, a load of some 19,000 or 20,000 pounds stuck, and in prising the load loose with a metal rod about four feet long the plaintiff claims to have strained his back which resulted in his permanent total disability.

The Workmen's Compensation Board, hereinafter referred to as the Board, found plaintiff to be totally and permanently disabled but that 25% of his disability was the result of a pre-existing disease, and the Company was ordered to pay him only 75% thereof, or $9 per week for 335 weeks. The Company's petition for a review was denied and its appeal presents but two questions: 1. Was Stevens' disability the result of pre-existing arthritis, or was it the result of an accident received in the course of employment? 2. is the claim barred by reason of his delay in giving the employer notice thereof?

18

The alleged accident happened about 3 P. M., but plaintiff worked out his shift which went off duty at 3:30 P. M. He rode home with a fellow-workman, Henry Shockey, and upon leaving the latter's automobile complained of his back and made the request that Shockey report him "off" the next day to his foreman. That same afternoon about 5 o'clock plaintiff visited his family physician, Dr. F. A. Fitch, telling the doctor he had strained his back by heavy lifting. Dr. Fitch diagnosed his trouble as lumbago, from which he had suffered two previous attacks, one in 1929 and the other in 1938.

The Company has a rule that all accidents must be reported. Plaintiff knew of this rule because in the twelve or thirteen years he worked for the Company he had reported something like fifteen minor accidents he had received. Upon leaving work that afternoon he passed by the door of the plant hospital but did not report his accident. None of the men working on the conveyor with plaintiff remembered the accident, or of his mentioning it at the time; although plaintiff testified he was made momentarily ill, stopped work for a couple of minutes and sat down and was only able to complete his shift by holding himself stiff or erect.

When Dr. Fitch diagnosed his trouble as lumbago, Stevens filed a claim with a mutual sick-benefit association of Company employees which would pay $9 per week for a maximum of 26 weeks for disability not caused by injuries received in the course of employment. The weekly notices the association required to be given it for sick-benefit payments recited such payments are not made for disability received in the course of employment and are signed by the claimant's physician. A stipulation in the record shows Dr. Fitch signed such sick-benefit certificates for plaintiff from Jan. 19th to May 5, 1939, showing his disability was not caused by injuries received in the course of his employment but was the result of lumbago.

The plaintiff did not respond to treatment and upon the advice of Dr. Fitch he had some X-ray pictures made of his back in April, 1939, by G. Russell Nease, a chiropractor, which he and Dr. Fitch read and interpreted as showing an injury to the sacro-iliac joint. Soon thereafter, on May 5, 1939, Dr. Fitch gave the Company written notice that Stevens had been under his treatment

from Jan. 16th to May 5, 1939, for what he diagnosed as lumbago, but which proved to be a sacro-iliac sprain "probably caused by heavy lifting" and was sustained in the course of his employment. On June 20, 1939, the plaintiff filed his claim with the Board.

It is the established rule that the burden of proof is on the claimant to show his disability was the result of the injury received by him. Under the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., he does not have to sustain his case by the weight of the evidence and the burden is met where he establishes his disability was caused by the injury; nevertheless, the evidence must possess something of substance and relevant consequence and not consist of vague, uncertain or irrelevant matter not having fitness to induce conviction. Section 4935, Kentucky Statutes, provides that an award of the Board shall be conclusive as to all questions of fact. Harland Wallins Coal Corp. v. Carr, 220 Ky. 785, 295 S. W. 1017; Harvey Coal Corp. v. Pappas, 230 Ky. 108, 18 S. W. (2d) 958, 73 A. L. R. 473. In American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S. W. (2d) 187, we quoted from National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 59 S. Ct. 501, 83 L. Ed. 660, to the effect that such evidence must be more than a scintilla and must create more than a suspicion of the existence of the fact to be proven, and must be enough to justify a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact to be tried by the jury.

Although the plaintiff suffered an attack of lumbago in 1938, and a previous attack something like ten years before, yet he had been performing labor in the Company's plant in an acceptable manner for the twelve or thirteen years he was employed by it.

Three different X-ray pictures were taken of Stevens' back. Dr. Nease, a chiropractor, who has had considerable experience in X-ray work took the first picture, which some of the doctors criticised as not being a very good film. Doctors Fitch and Hall both testified the Nease picture shows the sacro-iliac joint to be a little out of line, or sprained. Nease and another chiropractor, Ritter, testified this X-ray showed a rotation to the left of the three lower lumbar vertebrae. All of these witnesses were of the opinion plaintiff's condition was the result of the heavy lifting.

Dr. E. C. McGehee, a physician of 20 years' experience in making and interpreting X-ray pictures, made an X-ray of plaintiff's sprine, which he testified showed no separation of the sacro-iliac joint and showed no evidence of arthritis, which exhibits itself through bony hooks on the vertebrae. This X-ray was designated as negative, inasmuch as it showed no evidence of an injury to, or disease of, plaintiff's spine. In answer to a hypothetical question, Dr. McGehee attributed plaintiff's condition to the injury tearing loose the ligaments which hold the sacro-iliac joint.

Dr. J. R. Cooper, who makes a specialty of X-ray diagnosis, took a stereoscopic (two films in the same position with a shift of the tube) X-ray of plaintiff's lumbar vertebrae and pelvis. He found no evidence of traumatic injury, but only bony spurs on the vertebrae, evidencing arthritis. He criticised the Nease X-ray as being a "one-exposure" type and as inadequate to cover the parts examined. In answer to a hypothetical question by defendant's counsel giving the history of plaintiff's condition, Dr. Cooper said the lifting done by plaintiff did not cause his condition but that such a strain could aggravate a pre-existing condition. On cross-examination he stated medical authorities believed it possible to have a sacro-iliac strain from lifting without any visible evidence of it showing in an X-ray.

Dr. M. D. Garred testified from Dr. Cooper's X-ray that there was no separation of the sacro-iliac, but an arthritic condition was shown. Dr. William H. Rice also testified that the Cooper picture brought out details not apparent in the type of picture taken by Nease, and he agreed with Cooper and Garred that the former's picture shows plaintiff's condition was due to disease and not to injury. Rice further testified that although Nease's picture was a poor one, it showed no rotation of the spine. Thus his testimony directly contradicted that of four of the experts testifying for plaintiff.

Dr. Luther Bach was appointed by the Board to make an examination of plaintiff and he was furnished Dr. Cooper's pictures. He testified the X-ray showed no evidence of fracture and the spinal column is straight, but there are spurs or bony processes indicating chronic arthritis; that if plaintiff had the injury he described, it could have set off the arthritis and produced the pain and disability of which he complains. He stated he

thought plaintiff's condition was aggravated by the lifting, as plaintiff described it, rather than being caused from it.

There is considerable conflict in the medical testimony but it is patent from our reference to it that there was substantial evidence to support the finding of the Board that plaintiff suffered an accident and that 75% of his disability resulted therefrom.

The Company relies chiefly upon American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S. W. (2d) 187; Kentucky Utilities Co. v. Hammons, 284 Ky. 437, 145 S. W. (2d) 67, and George T. Stagg Co. v. O'Nan, 286 Ky. 527, 151 S. W. (2d) 51. The instant case is clearly distinguishable from them. In the Pack case the employee had tuberculosis which he contended he contracted from inhaling fumes from his employer's "pickling" vat but there was no evidence in the record such fumes caused his tubercular condition. The most the medical testimony there showed was that the fumes could have made the ground fertile for the tubercle-bacilli. We held such proof was indefinite and speculative and would not support an award.

In the Hammons case the employee claims to have suffered injury to his heart by reason of inhaling fumes from a kerosene torch and from an ash pit, but there was no proof of a substantial nature that his heart condition was caused by inhaling gas but that it was the result of a syphilitic condition. As Hammons was working full time on another job in an automobile factory and had passed a physical examination showing he was in perfect physical condition during the time he was seeking compensation for total disability, the proof showed he was not disabled and was not entitled to compensation. In the O'Nan case there was no proof the workman's condition was caused by trauma but only a possibility that it could have been so caused.

The testimony of Dr. Bach is to the effect that the strain in the back aggravated plaintiff's arthritis and we have held that where an accident "lights up" a pre-existing disease it is compensable, but the award should be apportioned according to the contribution of each. Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, 258 S. W. 318; Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50. This is just what the Board did

in this instance by finding 75% of the disability resulted from the accident and 25% from the pre-existing disease.

Complaint is made by the Company that there was no testimony showing just how much of the disability resulted from the accident and how much resulted from the arthritis. That is true, and it would be difficult to obtain proof which with certainty would say just how much of this disability was attributable to the accident and how much to the disease. However, Hon. W. J. Fields, who wrote a full and excellently considered opinion for the Board, gave as the reason for the Board so dividing the disability that the plaintiff had performed satisfactory services for the Company for more than twelve years with loss of but little time due to his arthritic condition, and with such a background it was reasonable to conclude that 75% of his disability resulted from the accident. The Board may consider not only the letter of the testimony, but all circumstances and reasonable inferences deducible therefrom. Agsten v. Brown-Williamson Tobacco Corp., 272 Ky. 20, 113 S. W. (2d) 829; Wilson Gas Utilities Corp. v. Little, 273 Ky. 478, 117 S. W. (2d) 197. Under this record the Board was justified in making the division it did of plaintiff's disability.

Plaintiff on leaving Shockley's car said to him, "You see I am hurt worse than I thought," and told Shockey to report him "off" in the morning; that in a day or so Shockey told him he had reported him "off," but did not know exactly what he had reported him "off" for; and a day after this conversation Shockey told him he went back and reported him "off hurt." Plaintiff relied upon this statement of Shockey.

Shockey could not remember whether he had reported Stevens "off" or "off on account of an injury." Sid Embry, the foreman under whom Stevens worked, testified to the effect that Shockey reported Stevens sick. Shockey was asked if he did not tell plaintiff's attorney that he first reported plaintiff "off," and a few days later reported that plaintiff claimed to be injured. Stevens equivocated and never did answer that question. Addie Dameron testified he heard Shockey tell plaintiff's attorney he had reported to the foreman that plaintiff was off because of an injury. Albert Hill testified Shockey told him that the next day after the plaintiff was injured he reported him "off" to the foreman on

account of an injury. Orland Raymer, who took plaintiff's place after he was injured says it was talked around the shop plaintiff had been injured.

Defendant raises the question that plaintiff should not be allowed to contradict his own witness, Shockey. Section 596 of the Civil Code of Practice provides that one cannot impeach his witness unless it is indispensable that he should have produced him, but that section allows him to contradict his witness by other evidence and by showing he has made statements different from his present testimony. Then too, more liberality is allowed in compensation cases in the introduction of evidence than is usually permissible in other cases. Kentucky Statutes, Sections 4930-4933; Standard Accident Ins. Co. v. Hinson, 251 Ky. 287, 64 S. W. (2d) 574.

If it be admitted that Shockey did not report the plaintiff's injury, we think that under the facts presented in this record the employee's delay in giving notice was occasioned by mistake made in the diagnosis of his condition. Stevens did not realize the straining of his back caused his condition and when he reported that he had suffered such a strain to his physician the night of the accident, the latter also did not attribute plaintiff's condition to the injury, but to lumbago. Here a skilled physician did not correctly diagnose the cause of plaintiff's disability and certainly it would be unreasonable and in contravention of the spirit of the Workmen's Compensation Act to hold that the workman should have known the accident and not disease caused his condition. As was written in Turner, Day & Woolworth Handle Co. v. Morris, 267 Ky. 217, 101 S. W. (2d) 921, there was nothing to put the workman on notice that the injury was such that it should be reported to the Company. In April plaintiff still thought his condition was the result of lumbago and went to the Company's physician, Dr. Rice, who diagnosed it as such. However, as soon as the X-ray was made and an injury to the sacro-iliac joint was disclosed, Stevens immediately gave the Company notice of his injury.

The Company relies on Kaufman-Straus & Co. v. Bennett, 275 Ky. 264, 121 S. W. (2d) 1, and Buckles v. Groger Grocery & Baking Co., 280 Ky. 644, 134 S. W. (2d) 221, as supporting its contention that the notice was not given as soon as practicable after the accident. These cases are not controlling here. In the Bennett case the

alleged accident happened on Feb. 10th and the workman never reported same even to his physician until May 8th, and he continued to work until May 19th. Although he was under treatment of a physician and he knew the doctor thought the injury might be the result of his accident, and although he was still working, he did not report the accident to the company until July. We there held Bennett did not report his accident as soon as practicable and there was no reason to justify his delay.

In the Buckles case the workman knew the accident was the cause of his suffering and thought it might produce a hernia, but he purposely put off reporting it for 54 days so he might work through the Thanksgiving and Christmas holidays. There it was written that the purpose of giving notice to the employer of the accident is that he may have an opportunity to examine into the accident and injury while the facts are accessible, and to afford medical and surgical care to the employee to minimize his injury and speed his recovery. Hernia is a progressive disease and the delay in the giving of notice might have prejudiced the employer in the defense that the hernia was in existence at the time the employee suffered the accident.

In the instant case the delay could not have prejudiced the Company as Stevens was under the care of a physician from the day of the accident and in April he visited the Company's physician who made the same diagnosis as did Stevens' family physician. We have written many times that where the delay in giving notice was occasioned by mistake or other reasonable cause and was not prejudicial to the employer it did not bar the workman's claim. Section 4917, Kentucky Statutes, provides that where the delay or failure to give notice was occasioned by mistake or other reasonable cause, the claim is not barred. It is apparent that if the Company's foreman was not notified by Shockey of plaintiff's injury the day after the accident, then under the facts disclosed in this record it was reasonable in Stevens to accept the doctor's diagnosis that his trouble was the result of lumbago rather than the accident, and we think this excused him from giving notice until his condition was correctly diagnosed.

The judgment is affirmed.

Whole Court sitting.