## Fiorella v. Clark et al.

Dec. 12, 1944.

E. B. Anderson for appellant.

C. E. Smith for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Vernie Clark, an employee of Joseph Fiorella, doing business as Arcadia Motor Service, was injured on June 2, 1941, in an accident arising out of and in the course of his employment. Fiorella operated a garage and filling station in Owensboro, Kentucky. Clark while greasing the chassis of a truck on top of an elevated grease rack lost his balance, and, to avoid falling, jumped from the grease rack to the concrete pavement 5 feet below and landed on his feet. He continued to work for two or three days after the accident, and then went to Dr. A. L. Kincheloe for treatment and later, at the suggestion of his employer, to Dr. S. J. Parker a chiropodist, who taped his feet and ankles and provided him with supports for his arches. Dr. Parker dismissed him on August 3, 1941, and he returned to work. On July 24, 1941, Clark, his employer, and his employer's insurance carrier signed an agreement on the Workmen's Compensation Board's form No. 9, fixing $13 as the amount of Clark's weekly compensation and fixing the period of temporary total disability at 7 weeks, beginning June 30, 1941. He was paid $13 on June 9, $26 on August 4, and $52 on August 28, 1941. On the day the last payment was made he executed and delivered to his employer the Workmen's Compensation Board's form No. 18, the settlement receipt, in which he stated that he had received the total sum of $91 in settlement of compensation under the Kentucky Workmen's Compensation Law covering the period ending August 17, 1941, on account of injuries suffered by him on June 2, 1941, while in the employ of the Arcadia

Motor Service. No report of the accident was ever made to the Workmen's Compensation Board by the employer nor did he ever send to the Board either agreement form No. 9 or the settlement receipt form No. 18. Clark continued in the employ of Fiorella until April 20, 1942, when he ceased working. On March 8, 1943, he filed with the Workmen's Compensation Board on form 11 his application for an adjustment of his claim against his former employer, Fiorella. In his application his injury was described as "either a compressed fracture of the 4th, 5th or 6th number lumbar vertebra or herniated intervertebral disc of the 4th, 5th or 6th lumbar vertebra. He also sustained an injury to both of his feet and ankles. Arches of each foot were broken down and the ligaments in the ankles torn." The application concluded with this statement:

"Employer selected and directed claimant to go to Dr. S. J. Parker for treatment and the insurance carrier acquiesced therein. Dr. Parker made no examination to ascertain whether claimant was injured in any wise other than in his feet and ankles and did not discover, learn or ascertain that claimant was injured in his spine; that claimant, although suffering from the injuries to his spine continuously from the date of the accident, did not learn, ascertain or know that he had sustained and was suffering from a compressed fracture of the 4th, 5th or 6th lumbar vertebra or was suffering from herniated intervertebral disc of the 4th, 5th or 6th lumbar vertebra, until examined by Dr. Franklin Jelsma in Louisville, Kentucky, on July 18, 1942."

In an amended application for adjustment of his claim filed April 16, 1943, he stated that "it was not until April, May or later, 1942, that the injuries to his spinal column were diagnosed and determined to be compressed fracture of the fourth or fifth lumbar vertebrae or herniated intervertebral disc of the fourth or fifth lumbar vertebrae." The employer pleaded limitations. The plea was based on the grounds that no claim for compensation was made to the employer at anytime, and, since the application for adjustment of the claim was filed more than one year after cessation of voluntary payments, the claim is barred.

Prior to the filing of the application for adjustment of the claim, Clark filed with the Compensation

Board a motion for a rule against the employer and his insurance carrier, requiring them to show cause why they had not filed with the Board agreement form No. 9 and settlement receipt form No. 18, both executed in 1941. The motion was filed with the Board on December 21, 1942, and was overruled April 6, 1943. At the same time the employer's motion to dismiss the claim because barred by limitations was overruled. Considerable evidence was heard, and the referee before whom the hearing was had found that Clark had suffered total permanent disability, and awarded him compensation in the sum of $13 a week from April 20, 1942, until June 3, 1951, the award not to exceed $7,500. On a full Board review a majority of the Board approved the award of the referee, and City of Louisa v. Horton, 263 Ky. 739, 93 S. W. 2d 620, and American Rolling Mills Co. v. Stevens, 290 Ky. 16, 160 S. W. 2d 355, were cited in the majority opinion of the Board in support of its conclusion. The circuit court affirmed the award, and the employer has appealed.

Only one question is presented by this appeal: Is appellee Clark's claim for compensation, on account of his injury to his spine received on June 2, 1941, barred by limitations? KRS 342.185 prescribes the time for giving notice of an accident and for making claim for compensation. The pertinent part of the Statute reads:

"No proceeding under this chapter for compensation for an injury or death shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof and unless a claim for compensation with respect to such injury shall have been made within one year after the date of the accident, * * *. If payments of compensation as such have been made voluntarily the making of a claim within such period shall not be required, but shall become requisite following the suspension of such voluntary payments."

The accident in which Clark claims he received his injury occurred on June 2, 1941, and voluntary payments amounting to $91 were made to him by his employer. Clark signed a settlement receipt on August 28, 1941, acknowledging receipt of $91 in settlement of compensation under the Workmen's Compensation Law on account of injuries suffered by him on June 2,

1941. The receipt was captioned "Settlement Receipt," and immediately under the caption this appeared: "This receipt means a final settlement. Do not sign it unless you intend to end payments of compensation and close the case." He made no claim for further compensation until March 8, 1943, when he filed with the Workmen's Compensation Board his application for adjustment of his claim. This was more than one year and six months after the cessation of voluntary payments. He insists that the limitation period fixed by the Statute does not apply because the injury to his spine was a latent one and its exact nature was not discovered until on or about July 18, 1942, when he was examined by Dr. Franklin Jelsma of Louisville, Kentucky. Appellee complained constantly of pain in his back after the accident, and prior to July, 1942, was examined and treated by Dr. G. W. Hardie, Dr. F. M. Sherman, and Dr. R .L. Schroeder, all of Owensboro. Dr. Hardie is a chiropractor and Dr. Schroeder is a physician and surgeon. Dr. Hardie, who treated appellee in April and May, 1942, testified that an X-ray examination "showed that down over the lumbar section of his spine there was a slip." In his opinion a fall from an elevation of 5 or 6 feet to a concrete pavement could produce the condition. He was asked, "Would the fact that he lit on his feet change your opinion about whether such a jump or fall would cause the condition that you found?" and answered, "I could not tell you that." Dr. Sherman treated appellee at intervals for about a year, beginning in April, 1942. He stated: "From his symptoms clinically, I diagnosed his case I think as what we term a herniated disc. That is the vertebral disc between the spinal column had been herniated and pressing on the cord." He was asked "whether one jumping off a grease rack elevated in the air five, six or seven feet and lighting on his feet on a concrete pavement below that grease rack might produce or cause a herniated vertebral disc," and answered, "Yes, sir, it could." Both Dr. Sherman and Dr. Hardie stated that Clark is totally and permanently disabled. Dr. Sherman sent appellee to Dr. Jelsma, who informed him that his trouble was in his 5th lumbar vertebra. Dr. Jelsma made a lengthy report to Dr. Sherman. The report concluded: "I believe patient is suffering from degenerative lesion of the spinal cord. This is not due to trauma." Dr. Schroeder first examined and treated appellee on June 20, 1942,

about three weeks before he was examined by Dr. Jelsma. Dr. Schroeder testified that appellee's condition was "a herniation or dislocation or pressure symptom complex due to injury." It was his opinion that the condition found by him was due to traumatic injury and not to disease.

It will be observed from the foregoing resume of the medical testimony that Clark was examined and treated by several physicians in April, May, June, and July, 1942. He testified that Dr. Sherman, who began treating him in April, 1942, told him he had spinal trouble and advised him to consult Dr. Jelsma of Louisville. On July 17, 1942, Dr. Jelsma told him that the injury to his back was either a compressed fracture of the 5th lumbar vertebra or a herniated intervertebral disc of the 5th lumbar vertebra. It is appellee's contention that he did not learn that he had sustained a compensable injury to his spine until April, 1942, at the earliest; that the injury was of a latent nature, and limitations did not begin to run until its discovery. He relies upon Turner, Day & Woolworth Handle Co. v. Morris, 267 Ky. 217, 101 S. W. 2d 921, Buckles v. Kroger Grocery & Baking Co., 280 Ky. 644, 134 S. W. 2d 221, and American Rolling Mill Co. v. Stevens, 290 Ky. 16, 160 S. W. 2d 355, and particularly upon the following language in the opinion in the Turner, Day & Woolworth Handle Co. case (267 Ky. 217, 101 S. W. 2d 924): "Where the condition produced by the accident is a latent one, the limitation period fixed by the statute commences to run from the time when it becomes reasonably apparent that a compensable injury has been sustained." The period of limitations dealt with in all of these cases was the period designated by the Statute for giving notice of the accident to the employer; that is, notice of the accident must be given to the employer as soon as practicable after the happening thereof, and the only question for determination was whether the employer had received timely notice of the accident as required by the Statute. In order to maintain proceedings for compensation, the claimant must have complied with two provisions of the Statute: (1) He must have given timely notice of the accident, i. e., as soon as practicable after the happening thereof; and (2) he must have made a claim for compensation within one year after the date of the accident, or, if voluntary payments of compensation

have been made, within one year after the suspension of such payments. The Statute fixes a definite time within which the claim must be made.

It is suggested that the payments made by appellant were made for injuries to appellee's feet and not for injuries to his spine. The settlement receipt signed by him was executed on account of injuries suffered in the accident of June 2, 1941. At most, it developed later that the injuries were more severe than he believed them to be when the payments were made. If the agreement for compensation executed by the parties had been filed with and approved by the Compensation Board, it would have become an award of the Board and could have been reopened and reviewed at any time during the compensation period on the ground of mistake or change of conditions. Black Mountain Corp. v. Middleton, 243 Ky. 527, 49 S. W. 2d 318; McIntosh v. John P. Gorman Coal Co., 253 Ky. 160, 69 S. W. 2d 7. However, it has been held that where no claim is pending before the Board, the filing of forms 9 and 18 with the Board is not mandatory, Langhorne & Langhorne Co. v. Newsome, 285 Ky. 519, 148 S. W. 2d 684, Edgemont Fuel Co. v. Patton, 256 Ky. 538, 76 S. W. 2d 284, and failure of the employer to report the accident does not estop him from relying on the Statute of Limitations. Elkhorn Colleries Co. v. Robinson, 234 Ky. 24, 27 S. W. 2d 393. In view of our conclusion that the claim for compensation must be made, in any event, within one year after the accident or after the cessation of voluntary payments, provided the delay is not induced by fraud or misrepresentation, the nature of the payments made by appellant is immaterial.

Appellee cites Acme Body Works v. Koepsel, 204 Wis. 493, 234 N. W. 756, 758, 236 N. W. 378, and other cases from foreign jurisdictions holding that if the injury does not develop until after the accident the cause of action arises when the injury develops, or becomes apparent, and not at the time of the accident. In the jurisdictions so holding the Statute provides that the claim for compensation shall be made within one year, or other specified period, after the date of the injury, not as in our Statute within one year after the date of the accident. In Acme Body Works v. Koepsel, supra, the court said:

"It will be noticed that under the amendment of 1929 the statute of limitations begins to run from the 'date of the injury' and not from the date of the accident from which the injury resulted. Under the Workmen's Compensation Act the date of the injury and the date of the accident are not convertible terms."

The word "accident" as used in our Statute does not mean the resulting injury, but means the occurrence itself, the happening of which causes the injury. The Statute is too plain to admit of the construction contended for by appellee.

We have examined the two cases cited in the Compensation Board's opinion, and find that neither is in conflict with the views herein expressed. Having concluded that the Board should have sustained appellant's plea of limitations and dismissed the application for adjustment of the award, the judgment is reversed, with directions to remand the case to the Compensation Board for appropriate orders.

Whole court sitting, except Judge Harris.