Sue C. KEEL, Appellant,

v.

THOMAS INDUSTRIES, INC., et al.,
Appellees.

Court of Appeals of Kentucky.

Feb. 19, 1971.

John Frith Stewart, Segal, Isenberg, Sales & Stewart, Louisville, for appellant.

Wilton Long, Louisville, Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, for appellees.

REED, Judge.

The appellant, Sue C. Keel, sought workmen's compensation benefits from her employer, Thomas Industries, Inc. She established that she suffered from a condition called "scalenus anticus syndrome." The employer brought the Special Fund into the proceedings by contending that the issue of "arousal of a dormant, nondisabling disease condition" requiring apportionment between the employer and the Fund was presented. The Workmen's Compensation Board found that "[appellant's] condition was not the result of an injury or occupational disease within the Workmen's Compensation Act." The circuit court upheld the board's decision. We conclude that we must affirm the circuit court's judgment.

Appellant worked as a glass cutter in her employer's lighting-fixture manufacturing plant. She noticed knots or lumps appearing on her wrists and forearms. After consulting various physicians because of these lumps and pain in her forearms and wrists, she finally was seen and her condition was diagnosed by Dr. Harold Kleinert, an eminent specialist in diseases of the upper extremities. Dr. Kleinert stated that the cause of appellant's pain and discomfort was a group of symptoms called "scalenus anticus syndrome." This described

condition is a developmental abnormality. It is inherent in the individual. It is observed among middle-aged women more frequently and among thin women in particular; it becomes symptomatic and painful when aging causes the neck muscles to lose their tone and elasticity and causes these muscles to sag and press against nerves and blood vessels which lead to the forearms. Dr. Kleinert was of the opinion that the posture appellant assumed when working (bent over in the shoulders) aggravated the condition and triggered her pain. Apparently the pain left when she was not working as a glass cutter unless she attempted to perform some task that entailed a prolonged posture in which her shoulders were bent over.

Appellant relies on National Stores, Inc. v. Hester, Ky., 393 S.W.2d 603 (1965). In that case, the claimant contracted the disease called tenosynovitis which is an attritional type of lesion caused by repeated movement of a tendon doing an unaccustomed type of motion. The claimant operated a calculating machine which necessitated continuous use of her right hand. The board found that the disease was solely caused by her work. This court held that under the evidence presented the claimant was entitled to compensation benefits because the tenosynovitis present met the requirements of a compensable occupational disease under KRS 342.316. In 1937, the court had held the same disease compensable where it was the result of an identified work-connected event in Turner, Day & Woolworth Handle Co. v. Morris, 267 Ky. 217, 101 S.W.2d 921. In the Morris case, tenosynovitis (a painful disease which inflames the sheath or membrane which surrounds a tendon) was regarded as a compensable result of a work-connected injury. These two Kentucky cases present a situation which is a variant from, but consistent with the observation in 1A, Larson Workmen's Compensation, section 39.60, to the effect that if occupational disease coverage is expanded, the parallel concept of accidental injury should be expected to broaden. When Morris was de-

cided, the disease could not have been compensated as an occupational disease, thus an accidental injury made it compensable because the work-connected injury caused the disease. When Hester was decided, it would have been inconsistent, to say the least, to hold that the same disease was not caused by the occupation.

▮ In the case before us, however, we are confronted with a developmental abnormality and not a disease; also, the condition which caused the pain and discomfort was not caused by the appellant's occupation. The medical evidence on which appellant relies plainly establishes that the syndrome from which she suffers is not a disease proximately caused by her employment; it is not a disease that had its origin in a risk connected with the employment. The tenosynovitis in the Hester case was occupationally caused and had its origin in an occupational risk. We cannot say that the board erred in its denial of benefits based on the absence of an "occupational disease" as that term is defined for compensation purposes in KRS 342. 316(1).

▮ The remaining consideration is whether, on judicial review, the courts may find that the board erred in not declaring the appellant entitled to benefits because of a work-connected injury [KRS 342.-005(1)].

In Hudson v. Owens, Ky., 439 S.W.2d 565 (1969), we reviewed the relevant elements to be considered where the claim is based on a work-connected injury and a pre-existing disease. Whether the work-connection should be considered legally causative or merely de minimis and coincidental is the key issue. In the case before us, we are told that the appellant's condition was caused by an inherent defect and not by a potentially progressive disease. We note the absence of an identifiable work-connected event. The discomfort suffered is not continuous, but leaves when the particular work is ceased, and does not return unless the particular work is re-

sumed. The only basis of the claim of work connection is that it requires a posture, not unusual or peculiar to the employment, which necessitates that the shoulders be bent over. Hence, although Dr. Kleinert says that appellant's pain is "job-related," can we say that the board was clearly unreasonable in its refusal to be convinced that the claimed injury was sufficiently "work-connected" to be compensable?

The board cited Carter v. International Detrola Corporation, 328 Mich. 367, 43 N. W.2d 890 in support of its conclusion. In that case the identical condition (scalenus anticus syndrome) was held noncompensable. Although there was more evidence of work connection than was here present in that the claimant had engaged in tipping 125-pound boxes on edge to inspect them, the Michigan court noted that the medical evidence established that the abnormality was not caused by strain or exertion. Larson discusses the Carter case in 1A, Larson Workmen's Compensation, Section 41.-50, at page 622.138. This authority points out that application of the standards for compensability produces controversial distinctions.

Appellant seeks to distinguish Carter as constituting the construction of a peculiarly worded statute. This argument within itself has validity. The fundamental inquiry is, nevertheless, the degree of work connection. Although Larson criticizes the use of the word "unique" in the Carter opinion and establishes that later Michigan cases hold that the character of the (employment) risk need not be "unique" (confined to the particular business of the employer), this does not militate against the right of the Workmen's Compensation Board to arrive at a value judgment on the required degree of work connection.

When all the equivocal circumstances present are considered, we cannot say, as the circuit court could not, that the evidence is so clear and convincing that the board was demonstrably unreasonable in finding noncompensability in this case. If we regard the board's decision as a finding that appellant did not sustain her burden in proving a work-connected injury or an occupational disease, then under the state of evidence presented the board was "free to remain unpersuaded." Workman v. Wesley Manor Methodist Home et al, Ky., 462 S.W.2d 898 (decided January 29, 1971).

The judgment is affirmed.

All concur.