# George T. Stagg Co. v. O'Nan.

Feb. 4, 1941.

Jerry A. Hogan, Leslie W. Morris and Marion Rider for appellant.

Charles Hobson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal is from a judgment confirming an award of the Workmen's Compensation Board to Dallas O'Nan, a former employee of the appellant, George T. Stagg Company. It presents two questions: (1) Whether he is barred from prosecuting his claim for additional compensation because of the one year limitation period stipulated by Section 4914 of the Statutes; and (2) whether there is any evidence of a substantial character supporting the finding of the Board that the present condition of O'Nan's arm is attributable to an injury received in his employment.

On March 16, 1935, while at work in appellant's distillery, O'Nan slipped and in falling caught a railing and twisted his right wrist or struck his elbow. He lost

no time on account of the injury. His employment ceased several months later. In May, 1935, the employer filled out what is designated as Form 7, prescribed by the Workmen's Compensation Board for the report of injuries received by an employee. In September, 1935, O'Nan accepted $179.22 and signed a receipt stating it to be in full and final settlement of his claims. This was on Form 18, prescribed by the Board. There was no formal memorandum of agreement to pay compensation as is provided in Section 4931. Neither of the completed papers nor any other was filed with the Board and there was nothing on its records concerning the accident or a claim.

On May 27, 1937, O'Nan filed a motion with the Board asking a reopening of his claim because of a changed condition. The company moved to dismiss because there had never been anything before the Board and the claim was barred by the one year limitation period, prescribed by Section 4914 of the Statutes. It had been more than one year and eight months since settlement had been made. Upon the request of the Secretary of the Board, appellant's insurance carrier forwarded to it Forms 7 and 18 above referred to, with the advice that there had been a voluntary settlement of O'Nan's claim, and insisted that his present application was barred. In its opinion denying the motion, the Board referred to Section 61 of the Act (4944 of the Statutes) as requiring that an employer shall make a report of all injuries received by his employees and is liable to a fine for each refusal or neglect (apparently the Board overlooked the provision that a report of injury is not required unless the employee's absence from work for more than one day), and reciting what had occurred in relation to O'Nan's claim. The Board construed Form 18 as an agreement and regarded the withholding of the settlement as a fraud or device which had hindered the employee from receiving the full benefits of the act. It thereupon entered an order that Form 18 and the letter of the insurance company should be regarded as an agreement. It approved that agreement and in the same order directed that the case be reopened and docketed for hearing.

After the taking of much testimony, the Board adhered to its former ruling as to its right and duty to reopen the case under the terms of Section 4902 of the

Statutes, and confirmed the referee's finding that the condition of O'Nan's arm, with its accompanying disability, is attributable to and is the direct result of the accident occurring in March, 1935. The Board found the applicant to have a 50% impairment of his arm and awarded him $5.23 a week for a period of 200 weeks, with interest on all past-due installments from March, 1935, credited by $179.22 already paid. The circuit court confirmed the award.

We do not find it necessary to pass on the question, which is vigorously argued by counsel for both sides, as to the application of the one year limitation provision of Section 4914 of the Statutes, since we are of opinion that there is not any relevant evidence of probative value supporting the finding of the Board that appellee's present disability is the result of his accident.

O'Nan testified as to having received the fall as above stated; that Dr. Minish, whom he consulted two days afterward, had prescribed the application of hot towels; that his arm had since given him pain and was weak, with little gripping power; that it had become "right smart worse" in the last six or eight months; that he had previously been healthy all his life. On cross-examination, O'Nan admitted having had gonorrhea ten or twelve years before, which would have been in 1925 to 1927. Dr. C. T. Coleman testified that at some one's request he examined O'Nan shortly before he filed his motion to reopen his case. He found bony nodules around his elbow and a limited motion and soreness. O'Nan had told him that he had struck his elbow in falling. This leading question (the objection to which should have been sustained) was asked: "From your examination of that arm, tell the Board whether or not you concluded that the present condition of O'Nan's arm grew out of the original injury that he told you about?" The doctor answered: "Yes, I did at that time." Nine days after O'Nan had suffered his accident, and at the instance of Dr. Minish, X-ray photographs were made of his arm. Dr. Coleman had examined them and stated that they showed O'Nan had what is known in medical terms as osteochrondromatosis, described by the witness thus:

"It is nothing more than just a little bony formation, calcium formation. Bones are mostly made up of calcium. And it has a number of nodules in the

tissue, in the capsules around the joint, around the elbow joint. I might say right in the joint, right in the joint itself.''

The ordinary causes of this condition are:

''Any inflammation of a severe nature and long duration. That would cover a multiple of causes, such as injury, such as syphilis, such as gonorrheal infection, such as tubercular infection.''

The only other evidence he gave tending to establish the cause of appellee's condition is that it ''might have had'' its origin in some traumatic injury. On cross-examination, Dr. Coleman admitted that the condition is very rare and is generally found in a joint; that it is or may be the result of a neoplastic growth, which ultimately produces the calcified nodules; that it would take time to build up a bony structure of that kind, the time differing with individuals; that within ten days a bony formation visible through a microscope or perhaps an X-ray could be formed, but that was ''just my guess; I am pretty sure it could''; that in order for the condition to develop rapidly it would be necessary that there be a severe inflammation caused by infection in the blood stream; that medical science teaches that the condition is very slow in developing. The doctor testified that gonorrhea is calculated to produce the condition. He declined to express the opinion that the condition did not exist when O'Nan struck his elbow or strained his arm.

On the other side, the testimony of Dr. Heman Humphrey, Dr. Charles D. Enfield and Dr. W. Barnett Owen, of Louisville, and Dr. L. T. Minish and Dr. F. M. Travis, of Frankfort, was given. Dr. Humphrey testified that when he examined O'Nan on July 8, 1935, he had an X-ray made of his elbow. His evidence is that there was no fracture or dislocation, but there was a calcification or bony deposit within the joint and in the adjacent tissues for the space of an inch or an inch and a half, and in another place a condition of one of the bones which was characteristic of arthritis. Dr. Humphrey could see no indication of osteochrondromatosis or any acute condition in or about the joint. His testimony, in short, is that the man's condition was due to gonorrheal arthritis—chronic and progressive. He gave his reasons and explanations for his opinion in his diagnosis. Shown the X-ray taken nine days after the acci-

dent, Dr. Humphrey stated they revealed the same condition. Other X-rays taken by Dr. Travis in August, 1937, revealed the same condition, with considerable advancement in the diseased processes. Asked concerning the disease of osteochrondromatosis, the doctor did not like the term (nor does a layman), and related that it was considered a sub-variety of the large family of chronic arthritis involving the bone and cartilage.

Dr. Owen and Dr. Enfield testified that trauma may bring about such a condition as O'Nan suffered, but they were of opinion that his condition as shown in the first X-rays could not have resulted in ten days after the striking of his elbow or the twisting of his arm. They were of the definite opinion that his condition had been a year or more in forming and was due to infection.

Dr. Minish, whom O'Nan consulted two or three days after the fall and who had the first X-ray made, testified that O'Nan had related to him that he had caught the railing and twisted his elbow and the doctor treated him for a strain. The X-rays showed calcium deposits which could have been caused by trauma infection or neoplastic—meaning an extra growth of tissues, like tumors. The medical authorities teach that the condition like O'Nan's is of slow development. He, too, was of the definite opinion that it did not originate with the trauma but it may have excited his trouble already present.

Dr. F. M. Travis had taken an X-ray of O'Nan's arm in August, 1937. He described that there were a number of calcified bodies of various sizes over quite an extended space and that O'Nan's condition is usually caused by gonorrhea or some other named infections or disease.

The opinion of the referee, adopted by the full Board, is in substance that the evidence showed that O'Nan was an able-bodied man, doing hard work before the date of his accident, and since that time his arm has given him trouble and continues to grow worse; that the doctors differed in opinions, particularly as to whether the calcium deposits could have developed within ten days following the accident; hence that the only conclusion to be reached was that the claimant's present condition, with its accompanying disability, is attributable to and is a direct result of the accident occurring March

16, 1935. Our analysis and understanding of all the evidence is that Dr. Coleman alone—and he was testifying as an expert only—expressed the opinion that O'Nan's condition might have been caused by trauma suffered in the fall and that it could possibly have developed within ten days; but taking his testimony as a whole, even these opinions were qualified. Some of the other doctors also stated that such a condition could be caused by trauma but not within so brief a period following an injury. They were very definitely of the opinion that O'Nan's condition was the result of gonorrheal infection. It is admitted that he had suffered with that disease eight or ten years before.

At most, there is proved only a possibility of causal connection. A possibility is not a fact nor is the opinion of possibility evidence of the existence of a fact, either primary or subsidiary. It is not evidence of anything from which the ultimate fact is reasonably inferable. We have time and again given recognition to the declaration of Section 4935 of the Statutes that the award or order of the Workmen's Compensation Board "shall be conclusive and binding as to all questions of fact" and accepted as limiting the judicial power to determining whether there is any evidence to support the finding. What is evidence is, of course, clearly a judicial or legal question. Always it is defined as competent testimony of relevancy and substance, proving and tending to prove a fact, or to induce a conviction of the existence of a state of fact.

In American Rolling Mill Company v. Pack, 278 Ky. 175, 128 S. W. (2d) 187, 190, we adopted the following quotation from National Labor Relations Board v. Columbian Enameling & Stamping Company, 306 U. S. 292, 59 S. Ct. 501, 83 L. Ed. 660:

"But as has often been pointed out, this, as in the case of other findings by administrative bodies, means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. [Citations.] Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' [Citations].

and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.''

It is to be borne in mind that this trial by the Workmen's Compensation Board was limited to determining whether there had been a change in the workman's condition since the settlement voluntarily made by the parties more than two years before, which the board approved retroactively, and, if so, whether that change in condition was the result of the industrial accident. There is some evidence that the striking or wrenching of his wrist may have ''excited'' the pre-existing condition. If it did, compensation for that had already been paid and accepted. There is nothing in the record to show that the progress and growth of the calcification of the bone was other than the natural result of a gonorrheal infection.

We are of opinion, therefore, that the circuit court should have set aside the award of the Compensation Board and the judgment should be reversed.

Judgment reversed.

Whole Court sitting, except Judge Perry.