OLD KING MINING CO. v. MULLINS et al.

Court of Appeals of Kentucky.

Nov. 13, 1952.

M. B. Fields, Hazard, for appellant.

Cordell Martin and John Chris Cornett, Hindman, for appellees.

MOREMEN, Justice.

Appellee, Granville Mullins, was an employee of appellant, Old King Mining Company, on January 11, 1949, when he was injured. He made application for compensation under the act, and the Board, being of opinion that he had suffered fifty per cent permanent partial disability, adjudged that compensation be recovered from appellant at the rate of $10.50 per week beginning January 11, 1949, for a period not to exceed 450 weeks nor a maximum of $8,600. Upon review by the circuit court, judgment was entered sustaining the award. This appeal is from that judgment.

Appellee had been an employee of Old King Mining Company for at least four years when he was injured, and both he and his employer had accepted the provisions of the Workmen's Compensation Act.

The accidental injury was received while appellee was operating a motor in a mine tunnel. He raised up, in order to place himself in position to get the pole to the motor, and his head came in contact with the roof of the tunnel. He fell from the motor and became unconscious. He regained consciousness the next day at a hospital. The sequence of events which occurred during the next few days is not definitely fixed by evidence, but it is reasonably certain that in a few days he returned to his job. On January 15, 1949, the script writer for the mining company, known in the record as "Lon" (and once referred to as Mr. Davidson), gave to appellee a note addressed to Dr.

Payne which read: "Please examine Granville Mullins, particularly his blood pressure and heart, to see if he is able to go back to work after suffering mishap the other night in motor." The doctor reported on the reverse side of the note, this: "January 15, 1949. Granville Mullins was in my office today. Says he feels fine. I find his blood pressure 148.80, pulse 84, wt. 146 lbs. He appears nervous, has superficial abrasions over both sides of face. He gives no history of fainting spells or fits and says he knows of no members of his family that are so afflicted."

The last sentence of the report was not a gratuity. There are some intimations in the record that the company believed appellee to be mentally unstable when he returned after the accident. In any event, after the above release by the physician appellee re-entered the mine. Here is how he described the ensuing period: "I don't know what I did do, to tell the truth, half the time I didn't realize what I was doing, didn't know I was in the mine half the time." And then, on his way to work one morning about three weeks later, "Something just happened to me and they come along and found me, a bunch of men, lying in the water hole below the mine." He did not work regularly thereafter because he had developed a patent neurosis.

Dr. Payne suggested that he needed institutional care and his labor union sent him to Wayside Hospital, a psychiatric institution at Lexington, where he remained for three months. Since he left there, he has been unable to obtain employment.

At a hearing before the referee, the appellee introduced no medical evidence in his behalf. He proved that he had worked continuously for many years prior to his injury and had been in good shape, but that since the date of injury he has had re-occurring spells of unconsciousness.

Appellant offered evidence of Dr. Eli C. Boggs who treated appellee at the hospital on January 11, 1949. He found no injury more serious than abrasions and lacerations of the face and right ear and a contusion to the right jaw. Another physician who had examined him prior to the accident, in 1948, testified that appellee had complained to him of an injury received when lifting a stone. He found him to be suffering from chronic bronchitis and chronic hypertrophic arthritis, not of traumatic origin.

The referee found it difficult to believe that a man, with a dependent family, who was earning between $350 to $400 per month, would fake an injury in order to receive $21 per week compensation. He recommended that the Board appoint a psychiatrist to examine him.

Dr. Louis M. Foltz of Louisville, a specialist in the field of neurology and psychiatry, was appointed. He gave appellee a detailed examination which he describes in full in his deposition. He found appellee to be suffering from complete disability as a result of a neurosis. His attempts to fix the effect the accident had on appellee's present condition led him to this determination: "My conclusion with these tests and with my examination is that the patient has had a neurosis for many years and that this neurosis has been aggravated by an accident that occurred to him two years ago. This conclusion is reached because the tests indicate that he has had a neurosis of at least ten years duration but that the neurosis is much worse now. Part of that conclusion that it is worse now is that his work record now is decidedly worse than it was before the accident."

Appellant contends that the award of fifty per cent permanent, partial disability was erroneous and assigns five reasons for reversal of the judgment. We will discuss each alleged basis for reversal under the same heading used by appellant:

1. The employee did not suffer an accidental injury arising out of and within the course and scope of his employment. Appellant argues, under this topic, that after the accident on January 11, he was examined by two doctors who found nothing wrong with him except superficial injuries, that he was not found unconscious for nearly three weeks after he had returned to work, and that no connection was shown between his act of falling unconscious after he had worked for three weeks

and the accident which occurred on January 11, and since KRS 342.005 requires that the injury must be the result of trauma, no competent evidence establishes that the accident aggravated the pre-existing neurosis. We believe this argument improperly disregards the conclusion reached by Dr. Foltz which is copied above. The appellee is not claiming that the fall which he suffered at the water hole was the trauma which caused the aggravation of his condition. His claim is based upon the shock he received when he was thrown from the motor in the mine. The opinion of the doctor in itself is sufficient to form a basis of award by the Board.

We held in Ashland Limestone Co. v. Wright, 219 Ky. 691, 294 S.W. 159, that neurosis is a disease which when caused by a trauma is compensable, and which when pre-existing is compensable to the extent that the impairment is aggravated. In Wood-Mosaic Co. v. Shumate, 305 Ky. 368, 204 S.W.2d 331, the rule in the Wright case was liberalized and we held that an employee might be compensated even for disease disability provided such disease had continuously lain in completely harmless and inert condition until aroused into active disability by a traumatic injury. Thereafter, and perhaps with the holding in this case in mind, the legislature amended KRS 342.005 and added the words, "whether previously disabling or not," so that the pertinent part of the statute now reads: " * * * provided, however, that 'personal injury by accident' as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall it include the results of a pre-existing disease, *whether previously disabling or not * * *."* We have therefore returned to the law as announced in the Wright case and the Board properly apportioned the percentage of impairment resulting from the trauma received.

2. The appellant was not given due and proper notice. It is true that no formal notice of the accident was given by appellee. However, the record is clear that the company was not misled by this failure. It was shown that appellee was immediately sent to the hospital where he was treated by Dr. Boggs who apparently was the company's doctor. Four days later the script writer for the company sent appellee to Dr. Payne for an examination before he was permitted to return to work. We believe under the circumstances proved in this case that formal, written notice was unnecessary. Black Mountain Coal Corporation v. Vickers, 294 Ky. 259, 171 S.W.2d 442; W. E. Gunn & Co. v. Woody, 239 Ky. 528, 39 S.W.2d 998. Also, there is no showing in the record that appellant was misled to his injury because of failure to be given formal notice in writing. KRS 342.200.

3. The evidence in the old file of Granville Mullins v. Southeast Coal Co., C-16774, should have been permitted in the Board's consideration of this case for the purpose at least of showing pre-existing disease. It is argued, under this topic, that the file in the above case shows that in a claim filed by appellee in 1942, he complained of impairment to his vision, pain in the neck, and hallucinations in some form which interfered with his sleep. The Board refused to consider this file in evidence and we believe properly so. However, we have examined that portion of the file which was introduced and find nothing in it inconsistent with the finding of the Board. Dr. Foltz testified that appellee had been suffering from some form of neurosis for at least ten years, even though he was able to work continuously. Appellee was not awarded compensation for disability which pre-existed. The award attempts to compensate him only for impairment resulting from the accident.

4. The testimony of Dr. Foltz, who qualified as a psychiatrist, is incompetent as it applies to "neurosis" in this claim. Under this section of the brief appellant argues that Dr. Foltz's testimony expressed only a possibility that Mullins's condition could have arisen as the result of an accident on January 11, 1949, that it only might have, and relies upon George T. Stagg Co. v. O'Nan, 286 Ky. 527, 151 S.W.2d 51. We do not reach this conclusion from a consideration of the testimony of Dr. Foltz. We believe he positively stated that appellee's

present condition was brought about to some extent by the trauma. We find his testimony to be positive, and it establishes a direct connection between the accident and the resultant impairment.

5. The Board found Mullins suffering fifty per cent partial permanent disability to the body as a whole and awarded him $10.50 per week for 450 weeks. This is erroneous on its face. We agree with the appellant in this contention. The Compensation Act, as amended in 1948, which was in effect at the time of the accident, bases partial permanent disability on the figure of $18 per week maximum. The amendment raising the maximum in KRS 342.110 to $21 did not become effective until after the accident—in June 1950. Therefore the award of fifty per cent should have been $9 per week for 450 weeks and the judgment is reversed only for the purpose of permitting the Board to correct the money amount of the award.

The judgment is affirmed in part and reversed in part.