STATE HIGHWAY DEPARTMENT, Workmen's Compensation Board of Ky., et al., Appellants,

v.

Cecil T. HOPWOOD, Appellee.

Court of Appeals of Kentucky.

Feb. 5, 1960.

George R. Effinger, Paducah, for appellants.

Roberts & Parham, Mayfield, for appellee.

STANLEY, Commissioner.

Upon the review of an order which denied workmen's compensation to the appellee, Cecil T. Hopwood, the circuit court found "that the controlling facts in this cause are undisputed and that by uncontradicted evidence the petitioner established that he received an injury on October 5, 1956, while in the course and scope of his employment by the respondent, State Highway Department, and that as a result of said injury petitioner was disabled and unable to work." The court thereupon adjudged the order to be "erroneous and not in conformity to the provisions of the Workmen's Compensation Act for the reason that there is a complete lack of any competent, substantial evidence of probative value to support the findings of said Board." The case was remanded to the Board for determination of the respondent's disability and for an award in accordance therewith. The Highway Department, on its appeal, contends there was competent evidence to support the finding of the Board, and the court was not therefore authorized to set it aside.

Hopwood was a member of a road weed clearance crew. In getting out of a truck he struck his head against an overhead cross bar and fell back into the truck bed, stunned or momentarily unconscious. He suffered substantial laceration of an eye and jerk of his neck. After receiving first aid, Hopwood resumed his work for the day and for awhile thereafter continued quite regularly in doing lighter work. But all the time he suffered pain in his head and neck. This continued up to the taking of proof on his claim for compensation for permanent disability.

Following the accident, Hopwood was treated for about six weeks by a chiropractor but got no better. On or about November 30, 1956, he went to see Dr. James T. Fuller, who conducted a clinic and hospital in Mayfield. Dr. Fuller put a neck brace upon Hopwood and treated him with pain relieving medicines upon 23 occasions. The brace was removed after about six weeks because the patient insisted that it hurt him and made him very nervous. Upon Dr. Fuller's recommendation Hopwood went to see Dr. A. J. Ingram, who conducted a clinic in Memphis. He later went to Dr. Francis Murphey, a neurological surgeon in Memphis.

The claimant has constantly suffered dizziness, nervousness and pain in his head, neck and left shoulder and arm. He has been restless and sleepless and has a poor appetite. He has lost 28 pounds in weight and has become weak and pale. Prior to the accident in which he received the injury Hopwood was a strong, healthy, good workman. Since then he has been partially or wholly incapacitated from doing any kind of substantial labor.

All of the above is undisputed. We turn to the testimony of the doctors.

Dr. Fuller testified to the case history and that X-ray examinations did not reveal any fracture; that because he thought Hopwood had some injured muscles or ligaments, he put a cervical collar upon him; that since it was removed he had treated Hopwood frequently to relieve his suffering. The doctor found no evidence of physical injury other than of a "neurotic or psychic nature" which, he states, is "sometimes worse than a physical disability." Asked if he thought Hopwood was a malingerer, the doctor answered, "I am led to believe that he is not a malingerer, but I am also of the opinion that he received no serious injury at the time of his accident other than of a psychic nature. I do be-

lieve the man genuinely thinks he is sick and I don't think in his present status [in July, 1957] he is able to hold down a job."

At the instance of attorneys for the Highway Department, it was agreed that letters from the Memphis doctors should be received and considered as their depositions. Dr. Ingram's letter, written two days after his examination of Hopwood, to "Crawford and Company" of Paducah (not identified), recites the case history and his examination of Hopwood and findings therefrom. His opinion and remarks were: "The headaches, fluttering of his heart, and fatigability, as well as the loss of weight, could not, in my opinion, be attributed to the sprain of the cervical spine joints, which he undoubtedly sustained when injured as described above. It is quite likely that these complaints are either neurogenic or psychogenic in origin and I would therefore recommend that he have a neuropsychiatric consultation and evaluation."

Dr. Murphey's letter was addressed to the attorneys for the insurance carrier. He had examined Hopwood on March 18, 1957. His letter recites the case history and the patient's complaint of pain in his head and shoulders, with heart palpitations and headache when he holds his head up. The doctor stated that his examination showed no abnormality in the head. He concludes his statement, "It is my opinion that this man has no evidence of any chronic injury to the nervous system as a result of this accident."

The Compensation Board states in its opinion that none of the doctors could find any evidence of "fracture or injury to discs" of the claimant, and that from the medical testimony the Board could find no causal relation between his neurotic condition and the bodily injury he had received.

Larson's Workmen's Compensation Law, § 42.22, in discussing physical trauma causing nervous injuries, says: "[W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic or hysterical symptom, have accepted this rule. Those denying compensation will usually be found to have done so not on the theory that traumatic neurosis is not compensable as such, but on the ground that the evidence failed to establish a causal connection between the injury and the neurosis."

Our decisions are in accord with the text. Ashland Limestone Co. v. Wright, 219 Ky. 691, 294 S.W. 159; Powell v. Winchester Garment Co., 312 Ky. 38, 226 S.W.2d 341; Old King Mining Co. v. Mullins, Ky., 252 S.W.2d 871; Eastern Coal Corp. v. Thacker, Ky., 290 S.W.2d 468.

The letters of the Memphis doctors are weak evidence, but it was agreed that they should be considered as depositions. Other than a history of the case, there is little in them except an expression of opinion formed by single examinations of the patient. While we may agree with the trial court that the mere expression of opinion without elaboration and without the witnesses being cross-examined has little probative weight as opposed to the evidence of injury and of the absence of any break in the chain of sequences, still the Compensation Board, in its discretion, accepted those professional opinions and based their finding of fact upon them.

The section of the Act authorizing appeals from decisions of the Workmen's Compensation Board to the circuit court and thence to this court, KRS 342.285, and its predecessor, § 4935, Ky.Stats., prior to 1948 declared that, "an award or order of the board upon review as provided in KRS 342.280, shall be conclusive and binding as to all questions of fact." An amendment and re-enactment of KRS 342.285 and 342.-290 in that year (Chapter 152, Acts of 1948) omitted the quoted clause. We have, nevertheless, continued to hold that a review by the courts will be limited to deter-

mining whether there was any substantial evidence of probative value to support the finding of fact by the Board.

This court is of the opinion that the trial court should have confirmed the Board's finding of fact that there was no causal relation between the physical injury suffered by the employee and his present neurotic and psychotic condition.

Therefore, the judgment is reversed.