**RICKY COAL COMPANY, Appellant,**

v.

**Willis ADAMS, Special Fund and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

March 29, 1968.

Richard D. Cooper, Hazard, for appellant.

F. Byrd Hogg, John Cornett, Whitesburg, Thomas R. Emerson, Dept. of Labor, J. Keller Whitaker, Workmen's Compensation Bd., Frankfort, for appellees.

MILLIKEN, Judge.

The sole issue on this appeal is whether part of the award by the Workmen's Compensation Board should be apportioned to the Special Fund.

This is an appeal by Ricky Coal Company from the judgment of the Letcher Circuit Court, which affirmed an award of the Workmen's Compensation Board that the appellee, Willis Adams, is totally disabled as

the result of a traumatic injury sustained on January 3, 1966, the duration of which cannot now be determined. Ricky asks that the award to Adams be apportioned in part to the Special Fund which had been made a respondent before the Board.

Adams' January 3, 1966, injury occurred when he came in contact with a header on a coal buggy. He was struck across his lower back in the accident and subsequently hospitalized at the Harlan Appalachian Regional Hospital, Harlan, where he received treatment. He complained then, as now, of pain in the lower back and numbness from the waist down.

Prior to the January 3, 1966, injury Adams had sustained five separate injuries from working in the mines for four different employers. Each injury was reported to the Workmen's Compensation Board by the respective employer and compensation was probably awarded in each instance although the record does not say so.

In connection with his most recent injury, Adams was examined by six doctors: three orthopedic surgeons, a neurosurgeon and two psychiatrists. The first orthopedic specialist who treated Adams, Dr. Loyall K. Wilson of Harlan, made a myelogram which he interpreted as revealing a small, centrally located, herniated nucleus pulposis at the level of L 4–5 and edema of the nerve root on the left side. While this condition might have existed then, it apparently subsided soon thereafter because no one else who examined Adams in connection with his present injury was able to find anything physically wrong with him or any physical causation for the pain he claimed was there. Dr. Wilson admitted that sometimes a herniated disc goes into remission or subsides and apparently that is what happened here because Dr. Vinke, Dr. Thompson and Dr. Augelucci found nothing. However, the symptoms of disc injury remained and the doctors concluded that the cause was psychogenic rather than organic. All of them recommended a psychiatric examination for Adams.

The two psychiatrists who examined him were Dr. Carl Wiesel of Lexington and Dr. Frederich Ehrman of Louisville. Both concluded that Adams suffered from conversion hysteria and that it was a dormant disabling condition brought alive by the traumatic injury of January 3, 1966. Dr. Ehrman leaned towards the position that Adams' problem was part of his personality makeup and he was reluctant to term the condition a disease. However, as mentioned before he did leave the impression that Adams' condition was pre-existing and disease-like if not actually so.

Dr. Ehrman merely observed Adams and conducted no physical examination or tests on him. Dr. Wiesel, however, ran experiments on Adams and was able to relieve his pain temporarily with injections of sterile water. Dr. Wiesel concluded that Adams was suffering from conversion hysteria which he explained was an accumulation of nervous symptoms that develop following a trauma of some sort, either physical or emotional, and which reveal themselves in complaints of physical disability. He testified that Adams was disabled because of his psychiatric condition; his emotional state exaggerated whatever physical disability he had to begin with and was thus disabling in its own right. Dr. Wiesel's answer on the "pre-existing" issue was as follows:

"Q. Now, Doctor, would you explain how you were able to establish that this conversion hysteria is a pre-existing disease condition?

"A. As I already mentioned, the man is rather limited intellectually and it is quite common in that type person to exaggerate any physical complaints; a person who is intellectually mentally defective is quite apt to over-react to injuries or other emotional trauma. In this particular person I had access to the report of his injury in December 1958, at which time there were no clinical findings to account for his symptoms, and in addition according to the history he was paralyzed immediately after the injury for a week or so, and then it cleared up spontaneous-

ly. Now in my mind there isn't any doubt but that this paralysis was a conversion hysteria also. And in 1965 he was hospitalized briefly for complaints of smothering. This was probably another emotional response on the patient's part. But these things make me feel this has pre-existed."

The Board refused to apportion any of the award in this case to the Special Fund and concluded Ricky is responsible for all of it. The psychiatric evidence in the case and Adams' reaction to his previous injuries make clear, it seems to us, that the traumatic injury of January 3, 1966, aroused a dormant psychiatric condition which had disabled Willis Adams on other occasions too.

There is some dispute over whether it is proper to call this mental condition a "disease", but it is certainly a contributory cause of Adams' disability. The appellant cites KRS 342.005(2) in support of this:

"The board shall apportion the aggregate extent and duration of disability among the contributory causes including, but not limited to, the following:

(A) Traumatic injury by accident,

(B) Pre-existing disease previously disabling,

(C) Pre-existing disease not previously disabling but aroused into disabling reality by the injury or occupational disease."

The Special Fund relies on Cabe v. Olin Mathieson Chemical Corporation, Ky., 412 S.W.2d 250 (1967), in which we reversed the judgment of the circuit court directing the Workmen's Compensation Board to hold the Special Fund liable and we believe our ruling was correct on the medical testimony produced. In that case, Roberts, the injured employee, had endured certain experiences in World War II which, along with his having been run over by a drunken driver, had resulted in what Dr. Ehrman described as affecting "his basic personality and makeup", but the doctor refused to term it a neu-

rosis or a disease although he admitted that Roberts' industrial injury had aggravated his personality aberration. Dr. Ehrman was the only psychiatrist who testified.

█ In the case at bar we have a pattern, a series of abnormal reactions to injuries on the part of the claimant, and the testimony of Dr. Wiesel, who examined and tested Adams, that Adams suffered from conversion hysteria. We think the linkage of his previous reactions to his present reactions from his present injury is so marked that there is little doubt that Adams suffered from a pre-existing non-disabling mental condition, whatever it is called, which was lighted up by his latest accident. As early as 1927 in Ashland Limestone Company v. Wright, 219 Ky. 691, 294 S.W. 159, we recognized that a neurosis of traumatic origin is a compensable disability. And in Old King Mining Company v. Mullins, et al., Ky., 252 S.W.2d 871 (1952) we held that a pre-existing neurosis is compensable to the extent it is aggravated by injury. To the same general effect are: High Splint Coal Company v. Jones, Ky., 338 S.W.2d 208 (1960); American Compressed Steel Corporation v. Blanton, Ky., 357 S.W.2d 888 (1962); Holland v. Childers Coal Company, Ky., 384 S.W.2d 293 (1964); E. I. DuPont De Nemours and Company v. Whitson, Ky., 399 S.W.2d 734 (1966).

Larson on Workmen's Compensation, Section 42.22 comments:

"There is almost no limit to the variety of disabling 'psychic' conditions that have already been recognized as legitimately compensable—conditions which not many years ago would have received little understanding or recognition on the part of courts * * * Those cases denying compensation will usually be found to have done so not on the theory that traumatic neurosis is not compensable as such, but on the ground either that the evidence failed to establish a causal connection between the injury and the neurosis, or that there was no disabling neurosis at all."

We conclude that the evidence is so clear in the case at bar that Adams had a pre-existing condition or disease which was not disabling until aroused into disabling reality by his injury, that the Board should have apportioned part of the liability to the Special Fund as the employer contends. The appeal by the employer to the circuit court was in time.

The judgment is reversed and the case remanded to the Workmen's Compensation Board for it to apportion part of the liability to the Special Fund.

All concur.