## American Rolling Mill Co. v. Pack et al.

March 10, 1939.

CALDWELL & GRAY for appellant.
WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

Throughout this opinion we will refer to the appellant, the American Rolling Mill Company, as the company, and the appellee, Ira Pack, will be referred to as the plaintiff.

On August 31, 1937, plaintiff filed his application with the Workmen's Compensation Board against defendant to recover compensation for permanent and total disability. He alleged that on May 8, 1937, he was injured by inhaling gas while working in defendant's plant at Ashland, Kentucky, at a strip pickler which gave off noxious gases. He alleged the nature of his injuries was "lungs injured and spotted, inflamed to the extent that he is disabled and ordered to bed by his physician, and deafness in both ears," and as a result of such alleged injuries he is totally disabled. The application was controverted of record, and upon a hearing the Board found plaintiff was permanently and totally disabled because of tuberculosis. The award of the Board attributed two-thirds of plaintiff's disability to an aggravation of his condition due to inhaling this gas in the cause of his employment, and one-third thereof to pre-existing tuberculosis, and awarded plaintiff $8 per week for 335 weeks.

Within the time provided for by the Statute plaintiff filed a motion for a review by the full Board. His motion was sustained and on a hearing before the full Board the first award was set aside. In lieu thereof plaintiff on account of permanent, total disability due to tuberculosis as a result of inhaling gas in the course of his employment, was awarded the maximum compensation of $15 per week for 400 weeks for permanent, total disability, plus interest on past due installments and medical and hospital expenses, not exceeding $100. The company filed its petition in the Boyd Circuit Court for a review of this award, which was denied, and judgment was entered affirming the award of the full Board, and the cause is now here on appeal.

There is practically no contrariety of evidence and the record shows the pertinent facts are that the plaintiff was employed by the company in August, 1928, and worked for it until the fall of 1929, at which time he went to Arizona and California. He remained out west until February, 1934, when he returned to Kentucky

and was reemployed by the company until he was laid off because of slack work June 11, 1935. He returned to work during October 1935, and was employed until he was compelled to quit in May, 1937, on account of an attack of "flu" which was diagnosed to be tuberculosis in July, 1937, at which time plaintiff was 29 years of age. During a six week period in October and November, 1936, plaintiff worked as a "loader" for thirty days, eight hours per day, in building No. 187, in which is located the "batch pickler." The pickler is a vat in which there is a liquid composed of from 86 to 88 per cent water, the remaining 14 or 12 per cent is sulphuric acid. This liquid is heated to 150 to 175 degrees Fahrenheit, or the steaming point. The steel sheets from the mill, in a black and scaley condition, are run through it and come out of the vat clean and bright—the purpose of the pickler vat being to clean the freshly made steel.

Plaintiff's proof is that there is a gas emitted from this vat which is strong enough to eat through clothing in a comparatively short time, giving it the appearance of being moth eaten; that this gas gave him a sore throat and his nose, gums and mouth became sore. His half brother, Charles Pack, testified he could not stand to work around this pickler and that the gases, or fumes, from it were bad on his teeth, throat and lungs. Chester Henry in testifying for plaintiff stated that the fumes from the pickler kept his mouth dry, his throat sore, as if he had tonsilitis, and had a choking effect on him.

The company introduced seven of its employees who worked nearer this pickler than did plaintiff, and these seven employees had worked in this close proximity to the pickler for from four and a half to eighteen years and none of them suffered any bad effects from the gas or fumes. There is no contradiction in the testimony given by the medical experts. The two testifying for plaintiff, and the one testifying for the company, practically agree the fumes from this vat will cause irritation to the tissue of the lungs and inflammation of the mucous membrane of the mouth, nose and throat. The doctors all agree plaintiff has tuberculosis and that tuberculosis is what is known as a "germ disease," and that where the tissue of the lungs is inflamed, fertile soil is prepared for the propagation of the tubercle-bacilli.

Plaintiff was a member of a sick benefit association of the company's employees, which entitled him to draw benefits for disability not connected with his work. In filling out the three certificates dated June 8, June 23 and July 12, 1937, to obtain sick benefits, his attending physician stated that plaintiff's disability was not caused by any injury sustained in the course of his employment. But we do not regard such evidence of great importance as a physician may make mistakes in diagnosing a patient's case. Indeed, the plaintiff's ailment was first diagnosed as "flu" in May and in July or August following, it was diagnosed as tuberculosis.

The question before us is whether or not the plaintiff is entitled to compensation under our Workmen's Compensation Act from inhaling gas from this pickling vat for thirty days during a period of six weeks in October and November, 1936, where there is substantial testimony showing an irritation and inflammation in his nose, throat and lungs, and that in May 1937, he suffered an attack of influenza and this was followed by a diagnosis of tuberculosis in July or August, 1937. So much of the Workmen's Compensation Act as is involved here is the following quoted part of Section 4880, Kentucky Statutes:

"This act * * * shall affect the liability of the employers subject thereto to their employees for a personal injury sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease but shall include injuries or death due to inhalation in mines of noxious gases or smoke, commonly known as 'bad air,' and also shall include the injuries or death due to the inhalation of any kind of gas."

Plaintiff's application for compensation bases his claim on injuries to his lungs and deafness in both ears on account of his inhaling gas from the pickling vat, which injuries he claims resulted in his tubercular condition. But the record shows plaintiff's sole disability to be from tuberculosis and there is no evidence of any other injury to him. The evidence of the irritation to the lung tissue, mucous membrane of his mouth,

nose and throat, is for the purpose of showing this gas made the soil fertile for the tubercle-bacilli. The testimony of the three doctors shows that practically all persons carry tubercular germs but are unaware of the fact until such germs become active. As Dr. McGee expressed it in testifying for the plaintiff, "the breathing of this gas would only prepare the soil for the tubercular germs." Dr. McGee further testified that tuberculosis often follows influenza.

The record shows from 90 to 100 men worked around the several pickling vats in the company's plant and tuberculosis is no more prevalent among them than the other 3000 men working at the plant, and the office force has the highest percentage afflicted with tuberculosis. To show there is no higher tuberculosis rate in the company's plant than elsewhere in the state, evidence was introduced to the effect that throughout Kentucky there are 5.4 cases per thousand among persons of the same age as the average employee in the company's plant, while there are only .74 persons per thousand afflicted with tuberculosis at the company's plant. Dr. Meadows, in testifying for the plaintiff, stated anybody might develop tubercular germs without an immediate or exciting cause.

On his redirect examination, Dr. Meadows gave this testimony:

"Q. The plaintiff in this case might never have had tuberculosis if it had not been due to that exposure to those acid fumes? A. Probably not, I couldn't say as to that. I don't know anything about his former life.

"Q. Well, assuming that his condition of health was good, that he had good lungs prior to breathing this acid, what in your opinion caused this infection to set up in the lungs? A. The tubercular germs, of course, as the result of his breathing any irritant would cause that mode of infection.

"Q. He might have gone along for years and not had any tuberculosis, except for that? A. Yes sir.

"Q. Then if the breathing of these acid fumes irritated and actually caused that infection, then what set it up and caused it, was the breathing of the acid fumes? A. Yes sir, it could have been the

cause. He could have worked at something else for years and might not have had it."

From the record in this case it cannot be determined with any degree of accuracy that the plaintiff became infected by tubercular germs from breathing this gas. It is admitted inhalation of the gas irritated and inflamed the tissue of plaintiff's lungs and the mucous membrane of his nose, mouth and throat. Yet all that plaintiff's own doctors testify is that such irritation and inflammation made the ground fertile for the tubercle-bacilli, and this might have caused plaintiff's tubercular condition. But these doctors did not testify it did cause plaintiff to have tuberculosis. They further testified that influenza is often followed by tuberculosis. Dr. Meadows testified plaintiff had influenza in May, 1937. This was seven months after he quit working on the pickler the preceding November, and certainly there can be no connection between his inhaling gas from this pickler in November and his being stricken with influenza the following May. We are not losing sight of the fact our statute allows compensation for injuries, or death, due to inhalation of any kind of gas; nor are we losing sight of the ruling of this court that the Workmen's Compensation Act is given a liberal construction. But plaintiff is not relieved from proving some connection between the inhalation of gas and his tubercular condition—the inhalation of the gas must be the cause, and the resultant injury, tuberculosis, must be the effect.

In Harvey Coal Corporation v. Pappas, 230 Ky. 108, 18 S. W. (2d) 958, 959, 73 A. L. R. 473, we held the burden was on the plaintiff to prove that his disability was the result of the injury received by him. But under the Workmen's Compensation Act the claimant does not have to sustain his case by the weight of the evidence, and such burden was met where the claimant showed the disability was caused by the injury. In that case, we said:

"The evidence must amount to something of relevant consequence, and it must not consist of mere vague, uncertain, or irrelevant matter, not carrying the quality of proof or having fitness to induce conviction."

Pappas was injured severely by falling slate in a mine and within a few days thereafter he discovered his eyesight was affected and this very soon resulted in his commercial blindness. We then said:

"When a man who has been in perfect physical health without any impairment of any of his organs, for many years, receives a severe injury, and immediately thereafter an impairment is discoverable, it is evidence that the injury produced the impairment, and there was an abundance of evidence of nonexperts establishing these facts."

Our compensation Statute, Section 4935, in making provisions for a court review of the findings of the compensation board prescribes: "An award or order of the board * * * shall be conclusive and binding as to all questions of fact * * *." But in the Pappas case, and in the case of Harlan Wallins Coal Corporation v. Carr, 220 Ky. 785, 295 S. W. 1017, 1018, and in numerous others, we held that in order for the findings of fact by the board to be given such conclusive effect the evidence heard before it must be "something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of proof or having fitness to induce conviction." It will, however, be seen that the interpretation as so phrased is more or less general in its terms.

In the case of National Labor Relations Board v. Columbian Enameling & Stamping Co., 59 S. Ct. 501, 505, 83 L. Ed. ..., decided Feb. 27, 1939, the United States Supreme Court had occasion to construe a similar provision contained in the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. A. Section 151 et seq. In Section 10(e) of that act this is said with reference to the findings of fact by the board created for the administration of that act: "The findings of the Board as to the facts, if supported by evidence, shall be conclusive:" 29 U. S. C. A., Section 160(e), but the court in the opinion referred to interpreted the meaning of that requirement and prescribed its limitations by saying:

"But as has often been pointed out, this, as in the case of other findings by administrative bodies, means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Washington, Virginia & Maryland Coach Company v. National Labor Relations Board, 301 U. S. 142, 57 S. Ct. 648, 81 L. Ed. 965; Consolidated Edison Company of New York v. National Labor Relations Board, 305 U. S. ..., 59 S. Ct. 206, 83 L. Ed. ... [decided Dec. 5, 1938]; Appalachian Electric Power Company v.

National Labor Relations Board, 4 Cir., 93 F (2d) 985, 989; National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 97 F. (2d) 13; Ballston-Stillwater Knitting Company v. National Labor Relations Board, 2 Cir., 98 F. (2d) 758, 764. Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' Consolidated Edison Company of New York v. National Labor Relations Board, supra, 59 S. Ct. 217, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. See Baltimore & O. R. R. Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169, 69 L. Ed. 419; Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720; Appalachian Electric Power Company v. National Labor Relations Board, supra, page 989 of 93 F. (2d)."

This elucidation sheds light on our general interpretation referred to and gives it more definite limitations. It better defines the route to be traveled by the courts in reviewing the findings of fact by administrative boards, including that of the compensation board. We think it is a correct exposition of the law applicable to Section 4935 of our Statutes.

In the case before us, plaintiff's proof does not measure up to the sound rule enunciated in the Pappas and Columbian cases, that the evidence must amount to something of consequence, and not consist of mere vague and uncertain matter not having the fitness to induce conviction. Plaintiff's testimony only showed that this gas fertilized the ground for the germs and that he might not have had tuberculosis had he not inhaled the gas. None of the other 90 to 100 persons working around these pickling vats contracted tuberculosis. Where only one man out of a hundred claims these fumes resulted in his tubercular condition, it cannot be said there is a direct connection between the inhalation of this gas and plaintiff's tubercular condition, especially where plaintiff worked for seven months after inhaling this gas and then had a severe attack of influenza only a month or two before being diagnosed as tubercular. If the plaintiff's illness is compensable

here, then in a factory where a window or door is opened for ventilation, and one workman out of 100 catches a cold in his head and chest and six months thereafter develops tuberculosis, such workman would be entitled to compensation, because it is common knowledge that such a cold fertilizes the ground for tubercle-bacilli. Under the Workmen's Compensation Act an employer is not an insurer of the health of the employees, and to hold the employer liable in this case would in effect make the employer an insurer. If there were any evidence as defined above, of relevant consequence having fitness to induce conviction connecting plaintiff's tubercular condition with the inhalation of this gas, we could not disturb the findings of the board under Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524, and the unbroken line of cases following it.

But there is no evidence showing plaintiff's inhalation of this gas caused his subsequent tuberculosis, except the vague and uncertain statement plaintiff's inhalation of this gas made the soil fertile for tubercle-bacilli and he might not have had tuberculosis if he had not inhaled this gas. Nor is there any evidence having the fitness to induce conviction that plaintiff's inhalation of this gas "lighted up" a pre-existing tubercular, condition so as to entitle him to a partial disability as we decided in Robinson-Pettet Company v. Workmen's Compensation Board, 201 Ky. 719, 258 S. W. 318, and Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50.

The plaintiff places much reliance in Mills v. Columbia Gas Construction Company, 246 Ky. 464, 55 S. W. (2d) 394, and Great Atlantic & Pacific Tea Company v. Sexton, 242 Ky. 266, 46 S. W. (2d) 87. The Mills case throws no light on the question before us, as there the appellant based his claim for compensation on contracting typhoid fever from contaminated water negligently furnished by his employer. We held in that case the disease did not result from an event which happened suddenly or violently, nor from an event which produced injury to the physical structure of the body at the time it happened; therefore, a claim for typhoid fever was not compensable because the act expressly excludes diseases of all character except where the disease is the natural and direct result of a traumatic injury. The Sexton case does not help us because the tularaemic infection was the result of sudden and violent changes in

the physical structure of the body and we have held Sexton's injury was the natural and direct result of a traumatic injury by accident sustained in the course of his employment.

The main authority relied upon by plaintiff is Crutcher Dental Depot v. Miller, 251 Ky. 201, 64 S. W. (2d) 466. In that case Miller breathed gas from a chromium plating outfit which affected his heart and lungs. He experienced a burning sensation in his nose and throat from inhaling this gas and developed symptoms of a severe head cold, accompanied by nasal hemorrhages. His case was finally diagnosed as a heart affliction known as mitral stenosis and some of the physicians testified to a tubercular condition indicated by rales and other symptoms of lung trouble. The liquid in the chromic vat was analyzed by a chemist and found to contain traces of zinc, tin and lead, and an analysis of Miller's urine revealed the presence of these elements. Scientific evidence showed that in inhaling the gases from the plating tank these metals carried with the gas found their way into the blood stream, and resulted in the disability from which Miller suffered. It will be noted Miller had in his urine traces of zinc, tin and lead, the same metals found in the chromic vat and in the gas given off therefrom, and the evidence showed these metals were carried with the gas into his blood stream and resulted in the disabilities from which Miller was suffering. To state it another way, Miller's disabilities were shown to be the direct result of the gas. We held in the Miller case it was not necessary for Miller to suffer a traumatic injury, or to accidentally inhale noxious gas, in order to recover compensation for injuries resulting from inhaling such gases, but that his injury was compensable where it was due to inhaling a gas in the course of employment without restriction or condition with respect to traumatic injury or accident.

In the case at bar there was no injury to any of plaintiff's organs (outside of the irritation to his nose, throat and lungs, and for which he is making no claim), but his claim for compensation is based upon tuberculosis, a germ disease. These germs are carried by most persons and they become active without any immediate or exciting cause, so the evidence in this record shows. It is impossible to tell where plaintiff picked up the tubercle-bacilli, or whether he already had it in his body, as most of us have. Nothing in the record shows,

with any degree of certainty, what caused them to become active. In the Pappas case above, the blindness immediately followed a severe traumatic injury and this was evidence the injury caused the blindness. In the Miller case, traces were found in Miller's urine of the same metals contained in the chromic vat and this was sufficient evidence to establish his heart ailment was caused by inhaling gas. But in the case before us there is no evidence to connect the tubercular condition of the plaintiff with the inhalation of gas from the pickling vat.

Mr. Justice Cardozo, in Connelly v. Hunt Furniture Company, 240 N. Y. 83, 147 N. E. 366, 367, 39 A. L. R. 867, where he undertook to distinguish a disease caused by germs taken into the body naturally from a disease caused by a wound or abrasion which became infected with germs, wrote:

> "Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time. * * * For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident. Our mental attitude is different when the channel infection is abnormal or traumatic, a lesion or a cut. * * * 'A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop.'"

The plaintiff is not seeking compensation for injuries due to the inhalation of gas and the Board did not base his compensation upon any injury he received therefrom, but the Board based its award upon plaintiff's tubercular condition, which it held was the proximate result from his inhaling the gas. We have heretofore pointed out in this opinion there is no evidence in the record upon which the Board could base its finding that the plaintiff's tubercular condition resulted from his inhaling this gas. Therefore, the judgment is reversed with directions to the circuit court to enter a judgment sustaining the company's petition for review and to set aside the award of the Board.