**OLD KING MIN. CO. v. MESSER et al.**

Court of Appeals of Kentucky.
Nov. 13, 1952.

M. B. Fields, Hazard, for appellant.

Cornett & Martin, Hindman, for appellees.

STEWART, Justice.

This appeal challenges the judgment of the Perry Circuit Court in sustaining an award to Danis Messer by the Workmen's Compensation Board.

Appellee, Messer, is undoubtedly disabled; nevertheless, appellant maintains his alleged injury did not arise out of and in the course of his employment but, on the contrary, it is contended his disability is traceable entirely to a pre-existing bodily condition. Two other points are raised in appellant's brief: One, there were no facts to support the Board's apportionment of appellee's disability on the basis of 70% to a pre-existing disease and 30% to the purported injury; and two, the Board and circuit court erred in applying KRS 342.-095, the total disability statute under the Workmen's Compensation Act, to the percentage of disability both found and adjudged chargeable to the employer. We have concluded appellant's first contention must prevail for the reason that we believe there is no substantial evidence of probative value from which we may reasonably infer that appellee's disability resulted from an accidental injury arising out of and in the course of his employment. Because our decision is predicated upon this ground alone, we reserve consideration of appellant's other claims of error.

Appellee testified he was working for appellant in its coal mine on February 15, 1949, loading coal in a car with a hand shovel, when he strained himself. He reported to Doctor M. B. Payne of Hazard, the next day, and this doctor, who was not only the physician for appellant and for appellee's union but who was also the worker's family physician, diagnosed the employee as having a prolapse of the rectum. Doctor Payne, a general practitioner, recommended that appellee refer his case to a rectal specialist for surgery and on March 2, 1949, Doctor Rufus C. Alley of Lexington, whose practice is limited to diseases of the colon and rectum, operated on him. The operation did not correct appellee's impairment, and he has not worked since his alleged injury, claiming it has rendered him totally disabled. According to him, he had lost no time from his job before the strain caused his prolapse.

Appellee was alone at the time he says he was injured. Two of his fellow employees testified they went to the place where appellee had been at work, and, upon reaching it, they saw him sitting beside the car he had been loading. He complained to them that he had hurt himself and stated that he did not want any more cars to load. Both witnesses said appellee's work record was a good one. On behalf of appellant, it was shown by three witnesses, miners who worked with appellee, that, before the February 15th incident, appellee appeared to be sick on occasions and would speak of rectal disorders and that he also would state he was unable to work and would "slacken down" on his job. They did not say, however, he was off from his work to any considerable extent.

In his deposition Doctor Alley described a prolapsed rectum as a protrusion outward of the rectal mucous membrane which normally occurs during defecation, but which, in case of a prolapse, persists after the bowel movement, and in which, in marked cases of the so-called complete prolapse, the whole bowel wall, including even its serous membrane, remains extended outward. On cross-examination, he stated that a prolapse is never produced by trauma but that it is a direct outcome of an inherent weakness of the structures which normally support the terminal bowel. The basic cause of such weakness, he continued, is usually congenital, and, in some instances, it may be due to an underlying

disease or it may result from malnutrition. Doctor Alley was of the opinion that appellee's condition was congenital, saying also in this connection: "* * * and I do not believe that any occupation or activity would in itself produce the defect that we have noted in this patient." Doctor Alley further testified he first saw appellee on March 2, 1949, and appellee at that time told him he had suffered from his complaint over a period of many years.

When Doctor Payne testified he said he saw appellee on February 16, 1949, and the employee then remarked: "I have been hurting all over for about two weeks. Can't rest at night, all my leaders cramp, principally in my arms, legs and the ribs, * * * every time my bowels move and my lower bowel comes out two or three inches and as big as my wrist, and they have all my life." This doctor also stated that appellee came to him periodically as a patient in 1946 and in 1947 and that his condition with reference to the prolapse was the same during that time as on the day following appellee's alleged injury. He explained that a person with this kind of weakness of the rectum was subject to a prolapse which could be produced by any sort of physical strain, such as a bowel movement or lifting anything. It was his opinion that appellee's disability, although it was total, was due entirely to a pre-existing disease.

Doctor C. M. Akers of Lackey, a general practitioner, was introduced as the sole medical expert in appellee's behalf. He testified he made one examination of appellee, which was only visual, and that was in December, 1949, at which time he says the latter was suffering from a prolapsed rectum, and that this resulted in his being totally disabled. After remarking that his diagnosis was based upon the history given by the patient, he stated that appellee's condition could have happened at any time by reason of a strain. However, he added that he could not tell when the original cause of the prolapsed rectum occurred. Doctor Akers' evidence is inconclusive as to the vital question posed in this case, that is, whether appellee's disability is attributable in any degree to his claimed injury. At most, it is his opinion there is only a possibility of a causal connection between the alleged trauma and the employee's impairment.

■ KRS 342.285 provides that an award or order of the Board shall be conclusive as to all questions of fact; but in Harlan Wallins Coal Corporation v. Carr, 220 Ky. 785, 295 S.W. 1017, on page 1018, we had this to say on this precise point: "It is true that the Workmen's Compensation Board's finding of facts is conclusive when there is some evidence to support it, but by 'evidence' is meant something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of proof or having fitness to induce conviction." See also American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S.W.2d 187, where this same principle of law was quoted with approval.

■ Under the Compensation Act it was not imperative that appellee establish his claim by the weight of the evidence, but the burden was upon him to prove by competent evidence that his disability was the direct result of the alleged injury of which he complains. Walker v. Lebanon Stone Company, 312 Ky. 624, 229 S.W.2d 163; Kentucky Utilities Company v. Hammons, 284 Ky. 437, 145 S.W.2d 67.

■ When we apply the tests we have enunciated to the foregoing testimony we are irresistibly led to the belief that appellee's disability is due to a pre-existing condition and is therefore not the result of a traumatic injury upon which he can base a claim for compensation.

Wherefore, the judgment is reversed with directions to the circuit court to set aside the award of the Board.