## CLEAR BRANCH MINING CO. v. HOLBROOK et al.

Court of Appeals of Kentucky.

March 7, 1953.

Howard & Francis, Prestonsburg, for appellant.

Cordell H. Martin, Hindman, for appellees.

STEWART, Justice.

This is a compensation case and there is only one question to be answered on this appeal, namely: Was there substantial probative evidence to support the award?

On July 27, 1948, Melvin Holbrook, a coal miner in the employ of appellant, The Clear Branch Mining Company, was found dead at his working place in Mine No. 1 of the latter located at Ligon, Kentucky. The evidence discloses that Holbrook, as was his usual custom, entered the mine at around 7:00 a. m. on the morning of his death at a drift mouth at the head of Abner Fork and walked to his place of employment. The body was found in a room about one-half mile from the nearest entrance and four or five feet from the face of the coal by a fellow workman, Taylor Watson, at approximately 7:45 a. m. Watson said that Holbrook seemed to have been dead ten or fifteen minutes at the time.

Appellee, Leva Holbrook, the widow of decedent, filed her application for compensation benefits under KRS Chapter 342 before the Workmen's Compensation Board on September 28, 1948. In this application, her answer to the question, "How did accident occur?" was: "Not fully known,

at present." On February 3, 1949, a second application was filed, wherein it was alleged in substance in answer to the above question that Holbrook's death resulted "from the bad and poisonous air" in the mine. The second application was treated by the Board as an amendment to the first. The facts were stipulated which gave the Board jurisdiction and which would entitle appellee to receive maximum benefits, if any be due.

The Referee who heard the case awarded appellee, Leva Holbrook, the maximum benefits provided by the Compensation Act. The opinion and award of the Referee was approved and adopted on a full Board review. The Floyd Circuit Court affirmed, and The Clear Branch Mining Company appeals.

To sustain her contention that Holbrook died from breathing bad or poisonous air, appellee relies upon the evidence of certain witnesses who testified that the trap doors in the section of the mine where Holbrook worked were open at the time of his death. The proof established the fact that it was necessary to keep the trap doors in the mine closed in order, generally, to maintain air currents throughout the various parts of the mine and, particularly, to force fresh air up to positions, often farthest from the main entry, where the miners were working at the face of the coal.

We shall now examine the evidence, in so far as it is applicable to the issues raised, of the various witnesses, all experienced miners, who testified in behalf of appellee. Andy Hamilton stated in his deposition that he saw four trap doors and that none of them was closed that morning. This was while he was making the "man trip" into the mine to start work. He had heard other employees complain at the time of lack of air in the mine, he said; "they would load their cars and get back on the main line to get air." When he was notified of Holbrook's death he was working on the main line, "a right smart piece" from where Holbrook died. He admitted he did not know about the air in the location where Holbrook was working.

Worley Newsome testified that some of the trap doors were open in the mine on the morning in question. He did not see or go near Holbrook that day. Perry Newsome's evidence was to the effect that Holbrook was working up above where he was loading coal when he was told Holbrook had died. He also said that as he went to work that morning he noticed in passing that the trap door was open in the passway leading to the room where Holbrook's body was found. He was asked to describe the effect the air in the mine had on him on the occasion of Holbrook's death. His answer was: "Well I had to quit and took two spells loading my car before I could get it loaded that morning, maybe three."

Taylor Watson, who found Holbrook's body, was asked if he saw any trap doors open as he came in the mine that morning. He replied: "Yes the trap door on the left to us, to where we worked, was open." He stated that the room in which he worked was about 30 feet from the one in which Holbrook was employed. This question was put to him: "Had you ever noticed any smoke or any impure air that seemed to be hanging in the room?" His answer was: "Well when our motor would burn a cable in two there would be a lot of smoke and seemed like it would go out slow." Holbrook, according to Watson, was lying dead against the end of the mine railway track. He observed no bruises on his face or body.

To combat appellee's theory that Holbrook's death was caused by "bad air", appellant depends, aside from medical testimony, upon the evidence of Harry G. McCarty, its director of safety, Willie Tackett, president at the time of the local union of which Holbrook was a member, and Lark Newsome, chairman of the mine committee that investigated whatever complaints the men might have with appellant. These men, together with two other miners, who did not testify, went to the room where Holbrook's death occurred. Since their testimony is substantially similar, we shall summarize their evidence. In brief, they found a plentiful supply of fresh air at the employment location of Holbrook. Tests

that were made at that point indicated that more air was present than the minimum set by the Department of Mines. They found all the trap doors closed; and they said the fan that forced outside air in was operating regularly. It was pointed out that most of the trap doors were controlled automatically and that if the fan became disabled a horn blew. McCarty disclosed that one side of the room in which Holbrook worked was only nine feet from an air current and the other side was only seventeen feet distant from another current. The inspection of the above group was made at around 2:30 p. m. on the day of Holbrook's death and appellee argues that, since it occurred so long after the body was found, it was of little or no value in determining the condition of the air in the mine at the time and place of Holbrook's decease. In this connection, Dewey Mitchell, a member of the mine safety committee of the local union and a witness for appellee, testified that he, accompanied by four or five miners, investigated the cause of Holbrook's death some two hours after the body was discovered. When asked about the circulation of air or ventilation of the room in which Holbrook worked, he stated "* * * we could not find anything wrong."

The two medical men in their testimony gave a similar version as to the cause of Holbrook's death. Dr. W. D. Osborne, called as a witness for appellee, stated that he had known decedent ten or fifteen years and that he had treated him "approximately a few weeks before he died". This question was propounded to him: "In your opinion, Dr. Osborne, what actually caused Mr. Holbrook's death?" He replied: "It was his heart, is my best opinion * * *." Dr. C. B. Cann, testifying in behalf of appellant, stated that he had treated Holbrook a short time before the latter's death. He described Holbrook's condition thus: "He had a bad heart, as bad as ever I listened to at that time." He made this further remark with reference to Holbrook's heart condition: "I told him at the time and I thought it was caused by drinking whiskey, alcohol in him, a heart disease like he had."

We now turn our attention to a consideration as to whether the findings of fact of the Board in such a case as the one at bar are binding upon this court in the face of KRS 342.285 which provides: "An award or order of the board * * * shall be conclusive * * * as to all questions of fact". But in American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S. W.2d 187, 190, it was stated that "* * * in the case of Harlan Wallins Coal Corporation v. Carr, 220 Ky. 785, 295 S.W. 1017, 1018, and in numerous others, we held that in order for the findings of fact by the board to be given such conclusive effect the evidence heard before it must be 'something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of proof or having fitness to induce conviction.'"

Under the Compensation Act it was not incumbent upon appellee to sustain her claim by the weight of the evidence, but the burden was upon her to prove by competent evidence that "bad air" inhaled by her husband while he was employed in appellant's mine caused his death. Walker. v. Lebanon Stone Company, 312 Ky. 624, 229 S.W.2d 163, and Kentucky Utilities Company v. Hammons, 284 Ky. 437, 145 S.W.2d 67.

When we apply the tests we have enunciated to the case before us, we believe there is a total absence of proof of any causal connection between "bad air" and Holbrook's death. We have carefully reviewed all of the evidence and we have noted that not a single witness testified that he knew anything about the condition of the air at the working place of Holbrook at the time the body was found. Two witnesses told about poor air existing in other parts of the mine. Only Taylor Watson's evidence tended to imply that the air in Holbrook's room was impure when he testified that if a fire was ignited where this witness was working it would make a lot of smoke and "it would go out slow". He offered no explanation on this score, and we cannot conclude from this bare statement alone that the low oxygen content in Holbrook's room, if such existed, produced his

death. Watson did not say that he was affected by the air about which he testified. Most of appellee's testimony was to the effect that many trap doors were open in the section of the mine in which Holbrook expired. No one stated how long these doors had been open. Still, even if the doors were left open for an appreciable length of time, it was clearly shown that two air currents passed in close proximity to the room in which Holbrook worked, so that he had access to an ample supply of fresh air.

We conclude that there was no evidence to connect Holbrook's death with the inhalation of "bad and poisonous air" in appellant's mine. Therefore, the judgment is reversed with directions to the circuit court to set aside the award of the Board.

COMBS, J., not sitting.