RENDERED:  NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0259-MR

AARON H. COPASS                                                                                          APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 15-CR-00070

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, McNEILL, AND L. THOMPSON, JUDGES.

ACREE, JUDGE:  A jury convicted Appellant, Aaron H. Copass, of first-degree

burglary under KRS[1] 511.020 and fourth-degree assault under KRS 508.030.  The

Court of Appeals affirmed his conviction on direct appeal.[2]  Copass then filed a

---

[1] Kentucky Revised Statutes.

[2] *Copass v. Commonwealth*, No. 2015-CA-001647-MR, 2017 WL 2609244 (Ky. App. June 16, 2017).

motion to vacate and set aside his conviction under RCr[3] 11.42.  The Fayette Circuit Court denied that motion, and Copass now appeals.  Finding no error, we affirm.

## BACKGROUND

At the time of his arrest, Copass attended the University of Kentucky and was a member of the National Guard.  Copass previously served active duty in Iraq.  He and Amanda Fogle had a romantic relationship and lived together until their relationship ended in February 2014.  Copass and Fogle resumed their relationship in September 2014 but continued to live separately.  They acquired a dog in November 2014, for which they shared day-to-day responsibilities in providing care.  Copass had a key to Fogle's apartment so that he could come by and take care of the dog.

After finishing a shift at work on December 4, 2014 at approximately 2:00 a.m., Copass texted Fogle to inform her that he would come over to her apartment the next morning to get the dog.  However, the text message exchange became confrontational, and Copass went over to her apartment that night instead.  When Copass arrived at Fogle's apartment, Fogle had closed two safety latches to prevent Copass from entering.  As Copass attempted to force the door open, Fogle called 911.  Copass succeeded in opening the door, and Fogle threw her phone at

---

[3] Kentucky Rules of Criminal Procedure.

him. A struggle ensued, which resulted in Fogle sustaining injuries to her face, wrist, and thumb, and bruises elsewhere on her body. At one point during the altercation, Copass covered Fogle's mouth, which prevented her from breathing and required her to bite his hand to force him to release her.

Two police officers arrived and interviewed Copass and Fogle separately. The officers then arrested Copass. A grand jury subsequently indicted him for first-degree burglary and fourth-degree assault.

The case proceeded to a jury trial. During *voir dire*, Copass's attorney moved to strike a juror for cause because the juror was a police officer employed by the Lexington Police Department; the juror worked with and knew the arresting officers and another witness for the Commonwealth. The trial judge denied the motion following a bench conference. Copass's attorney did not use a peremptory strike to remove the officer and did not object to any other juror for cause. The attorney used all nine of his allotted peremptory strikes on jurors other than the officer.

Several jurors indicated that they had been victims of or otherwise had experience with domestic violence or burglary. Copass's attorney used peremptory strikes to remove some of these jurors. However, he did not object to several others, and five of these individuals ultimately served on the jury.

Copass was convicted on both charges. On direct appeal, he argued (1) the trial court abused its discretion by failing to strike for cause the juror who was a police officer; (2) he was deprived of a fair and impartial jury because the trial court did not strike the jurors who had experience with burglary or domestic violence; and (3) he was entitled to a directed verdict on the burglary charge due to insufficient evidence. *Copass*, 2017 WL 2609244 at *2.

This Court was not persuaded by his arguments on appeal, concluding that, though he moved to strike the police officer for cause, he did not properly preserve the issue for appeal because he chose to use peremptory strikes on jurors that he had not objected to for cause rather than on the police officer. *Id*. at *3. Further, Copass was not denied a fair and impartial jury on the basis of the jurors who experienced burglary or domestic violence because he had waived the alleged error by failing to challenge these jurors for cause. *Id*. Finally, Copass was not entitled to a directed verdict because a reasonable jury could convict Copass of both crimes after evaluating the evidence before them. *Id*. at *4.

Copass then filed a motion to vacate and set aside his sentence pursuant to RCr 11.42 alleging ineffective assistance of counsel at trial. He presented five arguments: (1) trial counsel was ineffective because he failed to use a peremptory strike to remove the police officer during *voir dire*; (2) trial counsel was ineffective because he failed to object for cause to jurors who had experience

with domestic violence or burglary, and thereby failed to preserve the issue for appeal; (3) trial counsel was ineffective because he failed to investigate Copass's mental health problems resulting from his military service and failed to present a mental health defense; (4) trial counsel was ineffective because he failed to impeach Fogle on the basis of purported inconsistencies between her grand jury testimony and trial testimony; and (5) even if the above grounds are insufficient on their own, they constitute cumulative error sufficient to deem his trial counsel's performance ineffective. The circuit court denied his motion without an evidentiary hearing. This appeal followed.

## ANALYSIS

"In a motion brought under RCr 11.42, '[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding.'" *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (quoting *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009)). "The Sixth Amendment recognizes the right to the assistance of counsel . . . [and] 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S. Ct. at 2064. To establish this, a defendant must demonstrate to the trial court (1) that his defense counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Id.* at 687, 104 S. Ct. at 2064.

When analyzing trial counsel's performance for deficiencies, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)); *accord Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky. 2007). To determine whether this presumption has been overcome, courts must "analyze counsel's overall performance" as well as the totality of the circumstances surrounding his performance. *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016).

Demonstrating whether deficient trial performance prejudiced a defendant "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "The critical issue is not whether counsel made errors, but

whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Simmons*, 191 S.W.3d at 561 (citing *United States v. Morrow*, 977 F.2d 222 (6th Cir. 1992)).

Both components of the *Strickland* test "involve mixed questions of law and fact[.]" *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008). "[M]ixed questions of law and fact in collateral proceedings . . . are reviewed *de novo*[.]" *Johnson v. Commonwealth*, 412 S.W.3d 157, 166 (Ky. 2013) (citing *Brown*, 253 S.W.3d at 500). Both "counsel's performance and any potential deficiency caused by counsel's performance" are, therefore, reviewed *de novo*. *Brown*, 253 S.W.3d at 500 (citing *Groseclose v. Bell*, 130 F.3d 1161, 1164 (6th Cir. 1997)).

However, appellate courts review trial courts' pure factual findings for clear error. *Brown*, 253 S.W.3d at 500 (citing CR[4] 52.01). "When reviewing a trial court's findings under the clear error standard, the appellant court must determine 'whether or not those findings are supported by substantial evidence.'" *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 72 (Ky. 2010) (quoting *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *Am. Rolling Mill Co. v. Pack*, 278 Ky. 175, 182, 128 S.W.2d 187,

---

[4] Kentucky Rules of Civil Procedure.

190 (1939). But, substantial evidence need not be "absolutely compelling or lead inescapably to but one conclusion[,]" and instead is "'[e]vidence that a reasonable mind would accept as adequate to support a conclusion[.]'" *CertainTeed Corp.*, 330 S.W.3d at 72 (quoting *Moore*, 110 S.W.3d at 354).

*Jury Selection*

Copass's first and second arguments relate to jury selection. He first argues his trial attorney was ineffective by failing to use a peremptory strike to remove the police officer from the jury pool during *voir dire*. Second, he argues his trial attorney was ineffective by failing to preserve juror bias issues for direct appeal regarding a group of jurors who had, either directly or indirectly, experienced burglary, domestic violence, or both. We disagree. The trial attorney's decision to use peremptory strikes on other jurors was an exercise of his professional judgment. "Counsel's decisions with respect to jury selection are regarded as matters of trial strategy." *Caudill v. Commonwealth*, 120 S.W.3d 635, 653 (Ky. 2003).

Court and counsel questioned the police officer individually. The trial judge asked him whether he would feel pressure, as a police officer, to find Copass guilty. The officer stated he felt no such pressure, and that he would be able to consider and appropriately weigh the testimony and evidence. He acknowledged that, when he charges someone, he believes the person committed a crime.

However, when questioned further, the officer stated "facts and circumstances" could ultimately bear out otherwise. He demonstrated a clear understanding that criminal charges require probable cause, while convictions require proof beyond a reasonable doubt. And, he stated that "every day" an officer could believe he has probable cause to arrest someone who is later found not guilty.

A total of 24 jurors, including the officer, were questioned individually at the bench, and six of these jurors were removed for cause. Eight of the remaining eighteen were then removed by peremptory strike – defense counsel struck six of the eight. Each of these six jurors stated during a bench conference that he or she had directly or indirectly experienced burglary, domestic violence, or both. For instance, two jurors were victims of domestic violence for an extended period. Others' homes had been burglarized. Some indicated they would have a hard time remaining impartial based on their experiences. Accordingly, the bench colloquies reflect that counsel considered the histories of each juror and chose to exclude certain jurors over others. Defense counsel apparently believed the police officer was more likely to be impartial than the jurors he removed. This was a trial strategy decision, which does not constitute deficient performance.

Even if trial counsel's decisions regarding jury selection amounted to deficient representation, the police officer's participation on the jury did not prejudice Copass. A juror is not biased toward conviction solely because he or she

-9-

is a police officer. In *Brown v. Commonwealth*, the appellant asserted the Warren Circuit Court abused its discretion by denying a motion to strike for cause a juror who was a police officer. 313 S.W.3d 577, 596 (Ky. 2010). The juror stated during *voir dire* she worked as a police officer, encountered the Warren Commonwealth Attorney's office and the state police during her work, previously worked in federal law enforcement, and her brother and father had worked extensively in law enforcement. *Id.* at 597. However, when the court and parties asked whether she could assess the credibility of police officers as she would any other witness, "she stated that she was well aware that police officers could testify falsely or mistakenly and that her training had impressed upon her the importance of treating an officer's testimony no differently than anyone else's." *Id.* Because this juror had an "evident awareness of the realities of police testimony" and held a "manifest respect for fair proceedings[,]" the trial court denied a motion to strike her for cause. *Id.*

Here, too, we conclude the police officer who participated on the jury did not indicate a bias requiring removal. As in *Brown*, the officer here was confident he could evaluate the evidence fairly and did not feel pressured to reach a conviction. He understood an arrest or charge is not a conviction, and that conviction required a higher standard of proof. As in *Brown*, the juror here was

not automatically biased because he was a police officer and, therefore, his inclusion on the jury did not prejudice Copass.

Similarly, participation of five jurors who experienced burglary or domestic violence did not result from ineffective assistance, nor did it prejudice Copass. "[T]he mere fact that a prospective juror has been the victim of a crime similar to the crime being tried does not by itself imply a disqualifying bias." *Brown*, 313 S.W.3d at 598. Just as counsel and court examined the jurors who were removed, they examined these five jurors individually. Each indicated he or she could be impartial despite their experiences. Defense counsel considered their histories and answers and used his professional judgment to exercise his peremptory strikes on others and to allow these five to remain on the jury. We presume that such decisions "fall[] within the wide range of reasonable professional assistance[,]" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, and the trial court did not err in finding Copass failed to overcome this presumption.

*Mental Health Defense*

Copass argues his trial counsel was ineffective because he did not investigate Copass's history of PTSD or hire a mental health expert to present a mental health defense at trial. Again, we disagree. In victim impact statements, Fogle and her mother both stated their belief that Copass suffered from PTSD resulting from his active duty military service. Copass testified in his own defense

at trial, and he informed the jury that he had served in active duty in the National Guard and was undergoing counseling through the Veterans Administration. Though counsel did not pursue a mental health defense during trial, he did present mental health issues for mitigation purposes during sentencing.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id*. Copass's trial counsel was aware of Copass's mental health history, and used information obtained from conversations with his client to inform his tactical decision to use this information to mitigate Copass's sentence rather than as a defense at trial. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id*. Thus, the trial court did not err when it determined that trial counsel's decision to not present a mental health defense did not constitute ineffective representation.

*Impeachment of Fogle*

Next, Copass argues his trial counsel was ineffective because he did not impeach Fogle based on inconsistencies between her trial testimony and her

-12-

grand jury testimony. As the Commonwealth correctly notes in its brief, there is no transcript of Fogle's grand jury testimony in the appellate record. Though the trial court's order does discuss Fogle's grand jury testimony – specifically, that Fogle had asked Copass earlier that day to come over to take care of the dog – the record does not include the transcript of Fogle's grand jury testimony. "[W]hen the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). We must assume the omitted transcript of any grand jury testimony would have supported the trial court's determination that counsel's decision not to cross examine Fogle here did not constitute ineffective assistance.

Regardless, the trial court properly deferred to defense counsel's decision to limit his cross examination of Fogle. It is reasonable strategy to avoid excessive impeachment of the victim during a domestic violence and burglary trial. We agree with the trial court that this decision was strategic and is therefore an insufficient basis to conclude defense counsel was ineffective.

*Cumulative Effect*

Copass argues his defense counsel was ineffective due to cumulative error. He argues the alleged instances of ineffective assistance demonstrate, in combination, that he was deprived of a fair trial, even if each instance is

insufficient on its own to warrant setting aside his sentence. We find no such cumulative effect. "In view of the fact that the individual allegations have no merit, they can have no cumulative value." *McQueen v. Commonwealth*, 721 S.W.2d 694, 701 (Ky. 1986).

*Evidentiary Hearing*

Lastly, Copass argues the trial court erred by denying his motion without first conducting an evidentiary hearing. We disagree. When a trial court evaluates an RCr 11.42 motion, it "shall determine whether the allegations in the motion can be resolved on the face of the record, in which event an evidentiary hearing is not required[;]" it is required to conduct an evidentiary hearing "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citing *Stanford v. Commonwealth*, 854 S.W.2d 742 (Ky. 1993)).

Copass has stated no such grounds. Each of his arguments alleging ineffective assistance can be conclusively resolved upon an examination of the record. In our view, the record demonstrates each alleged error was an exercise of trial counsel's professional judgment in shaping his trial strategy. Because the trial court could evaluate the merits of Copass's RCr 11.42 motion on the face of the

record before it, it did not err by not conducting an evidentiary hearing before denying his motion.

## **CONCLUSION**

For the foregoing reasons, we affirm the Fayette Circuit Court's December 29, 2020 opinion and order denying Copass's RCr 11.42 motion.

ALL CONCUR.

BRIEF FOR APPELLANT:

J. Ryan Chailland
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky